Argued and submitted May 21, affirmed October 6,
reconsideration denied November 13,
petition for review denied December 23, 1980 (290 Or 271)

PHAIR, et ux,
*Appellants,*

*v.*

WALKER, et al,
*Defendants,*
WALKER, et al,
*Respondents.*

(No. 77-1028 E, CA 15571)

617 P2d 616

Kelly Andersen, Klamath Falls, argued the cause for appellants. With him on the briefs was Robert Thomas, Klamath Falls.

Neal G. Buchanan, Klamath Falls, argued the cause and filed the brief for respondent Bobbie Lou Walker.

William P. Brandsness, Klamath Falls, waived appearance for respondent Elizabeth Coe.

Bradford J. Aspell, Klamath Falls, waived appearance for respondents Trans-Continental Land & Livestock Company and Shasta County Bank.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

WARREN, J.

## WARREN, J.

Plaintiffs in a real property foreclosure suit appeal from the ruling of the trial court reinstating a land sale contract. They assign as error what they characterize as the trial court's attempt to rewrite the contract and the finding that plaintiffs had unclean hands. We review *de novo.*

In 1959, Blanche H. Balsiger sold plaintiffs a parcel of real property located in Klamath County by land sale contract. The contract provided that time was of the essence and included an acceleration clause which would cause the entire unpaid balance to become immediately payable should any payment fall 30 days overdue. In 1962, with Balsiger's written consent, plaintiffs delegated their obligations under the contract and assigned their interest in the property to Hal and Betty Coe, but retained to themselves an interest in part of the property. The agreement was not a novation, because Mrs. Balsiger retained the right of recourse against plaintiffs. The Coes made full payments directly to Mrs. Balsiger.

In 1970, Hal Coe conveyed his interest in the contract and property to defendant Betty Coe. In 1971, with Balsiger's consent, Betty Coe delegated her obligations under the contract and assigned her interest in the property to Chandler and Bobbie Walker[1] for a sum certain.[2] In 1976, a decree of dissolution of marriage procured by default judgment granted defendant Bobbie Walker her former husband's interest in the property. Mr. Walker continued to make payments on the contract, not as a requirement of the decree, but apparently voluntarily.

In March, 1977, Mrs. Balsiger died. For the past several years, she had routinely accepted late

---

[1] The question whether the Walkers were bona fide purchasers without notice of the reserved interest of the present plaintiffs was litigated and determined in favor of plaintiffs in *Phair v. Walker,* 277 Or 141, 146, 559 P2d 882 (1977).

[2] That sum was not paid. Betty Coe then obtained a judgment lien against the property which remains outstanding. Other judgment creditors were also made defendants in this suit.

payments. By letter dated August 19, 1977, counsel for the estate of Mrs. Balsiger notified Mr. Walker in Nevada that in order for the estate to be administered, it was necessary that arrearages on the contract be paid within ten days, and past due taxes within 30 days, or the estate would declare the full balance immediately due and payable and would institute fore-closure proceedings. Defendant Bobbie Walker was not sent a copy of that letter. The attorney for the estate sent a copy to plaintiffs; he had been in contact with plaintiffs' attorney regarding plaintiffs' possible purchase of the rest of the property.

Despite the August 19 letter, on September 14, 1977, a payment of one installment on the contract was accepted by the estate. Several payments were still past due. On September 29, 1977, the estate's attorney sent a second letter to both Chandler and Bobbie Walker at their separate addresses. Defendant Bobbie Walker did receive this letter, which referred to the demand made in the earlier letter and advised that since the arrearages had not been timely paid, the personal representatives of the estate had elected to declare the full balance immediately due and to begin foreclosure proceedings. A copy of this letter was also sent to plaintiffs.

On October 14, 1977, plaintiffs paid the amount of the entire balance due on the contract to the Balsiger estate, which assigned to plaintiffs all its rights under the original contract and its interest in the property. Plaintiffs thereby acquired the vendor's interest in the contract. Bobbie Walker retained the equitable interest in the original contract which had been assigned to her through the Coes, and thus re-mained the equitable contract vendee.[3] On October

---

[3] Although the contention was not made at trial, defendant Walker argues on appeal that the Balsiger-Phair contract was fully performed and that acceptance of a deed by plaintiffs merged the rights conferred by the contract into it, under *City of Bend v. Title & Trust Co.,* 134 Or 119, 126-27, 289 P 1044 (1930). The court said there, however, that the rule was founded on the privilege of the parties to change their contract obligations by further agreement *prior* to performance.

18, a further monthly installment on the contract was due from Bobbie Walker. It was not until November 7, 1977, however, that she tendered the full amount of the arrearages and back taxes then overdue. Plaintiffs, who were then the vendors, refused that tender and filed this foreclosure action in December, 1977, in reliance on the two letters sent by the attorney for the estate of Balsiger.

The trial court ruled (1) that plaintiffs were estopped from asserting the "time is of the essence" clause because late payments had previously been allowed, (2) that plaintiffs had not given defendant Bobbie Walker adequate notice of their intent to foreclose, and (3) that plaintiff Ronald Phair had unclean hands in attempting to acquire the property after insufficient notice to defendant Bobbie Walker by refusing her tender of the arrearages and foreclosing "almost immediately upon acquiring the vendor's interest."

■ On appeal, the parties argue extensively about whether defendant Bobbie Walker received actual or constructive notice of the first letter. We need not address that issue, for we find that the attempt in the letter of August 19, 1977, to reinstate the strict time requirements of the contract was defeated by the subsequent acceptance on September 14, 1977, of another late payment. That act accorded with the prior longstanding practice of allowing payments to be made late. If we assume the first notice was valid as to Bobbie Walker, the estate could have declared the entire balance due as early as August 30. Acceptance of another untimely installment had the effect of

---

The effect of a merger here would be that plaintiffs tried to foreclose on the wrong contract. But plaintiffs did not acquire the whole title after the estate assigned its interest to them. They still possessed only a legal title encumbered by the equitable interest of defendant Bobbie Walker. *See Panushka v. Panushka,* 221 Or 145, 150, 349 P2d 450 (1960). The original contract continued in force between plaintiffs as assignees of the original vendor and Bobbie Walker as assignee of the original vendees. *See Fogarty v. Hunter,* 83 Or 183, 206, 162 P 964 (1917).

putting the parties back in the position they had been prior to the first letter. At that point, defendant Walker was again entitled to notice advising her that in the future the terms of the contract would be strictly enforced and allowing her reasonable opportunity to cure the default. *Fisher v. Tiffin,* 275 Or 437, 442, 551 P2d 1061 (1976); *Stinemeyer v. Wesco Farms, Inc.,* 260 Or 109, 115, 487 P2d 65 (1971).

■ Since the first letter was rendered nugatory by acceptance of a further late payment, and defendant Walker was entitled to a second notice affording her a reasonable period of time in which to cure her arrearages, the second letter specifying no period of time was likewise ineffective. Even if treated, however, as a notice of intent to foreclose, with a reasonable period of time in which to cure arrearages implied therein, we conclude the trial court was correct in reinstating the contract.

■ Due to the inconsistent action of the estate with respect to the acceptance of a late payment after the August 29 deadline, and the prior course of dealing over a number of years in which the vendor had accepted late payments from defendant Bobbie Walker and her predecessors, we believe the periods of time specified in the August 19 letter were unduly short.

■ Defendant Bobbie Walker tendered the amount of the contract arrearages and back taxes within approximately 38 days after September 29, 1977. Under the circumstances, we find that the tender was made within a reasonable period of time and plaintiffs were not entitled to strict foreclosure.

Affirmed.