Argued and submitted November 8, reversed and trial court affirmed December 27,
1984, rehearing denied February 12, 1985

## ESTATE OF BREWER,
*Petitioner on review,*

*v.*

## IOTA DELTA CHAPTER, TAU KAPPA EPSILON FRATERNITY, INC.,
*Defendant,*
## TKE HOUSE FUND, INC.,
*Respondent on review,*

*v.*

## KREBS et al,
*Third-Party Defendants - Respondents.*

(CC 80-0890-NJ-2; CA A27722; SC S31014)

692 P2d 597

Thomas C. Howser, of Cottle & Howser, P.C., Ashland, argued the cause and filed the petition for petitioner on review.

Karen C. Allan, of Foster & Purdy, Medford, argued the cause for respondent on review.

JONES, J.

## JONES, J.

Plaintiff, The Estate of Gail S. Brewer, Sr., seeks review of a decision of the Court of Appeals that the mortgagee of a vendee's interest had rights in the property that were not extinguished when the vendee abandoned its interest in the property. We reverse.

The essential facts are not in dispute. On April 28, 1965, Gail and Mildred Brewer, husband and wife, sold the subject property by land sale contract to Eleanor Johnson and Lydia Nissen. The sale price was $17,600 with a down payment of $3,000. Mrs. Brewer died before being further involved. In April, 1972, Nissen acquired Johnson's interest in the contract by quitclaim deed. On June 5, 1972, Nissen assigned her vendee's interest in the contract to Iota Delta Chapter, Tau Kappa Epsilon Fraternity, Inc. (Chapter). The contract balance at that time was $12,196.55. Chapter obtained a $9,200 loan from Tau Kappa Epsilon House Fund (House Fund) for the purchase of Nissen's equitable interest, on condition that House Fund be given a mortgage on the vendee's interest and on Chapter's interest in the contract. On July 11, 1972, House Fund recorded in the deed records of Jackson County an installment promissory note in the amount of $9,200 with interest at six percent per annum, signed by Chapter and made in favor of House Fund.[1] The note was dated May 15, 1972.

In April of 1973, Gail Brewer and Chapter entered into an agreement amending the original contract. Brewer loaned Chapter an additional $3,000, thereby increasing the balance owing on the land sale contract. The amendment expressly recognized the existence of House Fund's mortgage on Chapter's vendee's interest by providing that $2,000 of the loan proceeds would be paid to House Fund "in partial payment of a second mortgage loan on the property."

During 1974, Chapter was unable to pay any of its debts, including the contract payments. In August or September of 1974, Chapter's advisor and registered agent, Terry Adams, delivered to Brewer the keys to the premises and

---

[1] The document that was recorded was merely an installment note with a legal description attached. There was no mortgage document as such with the typical granting language or covenants.

stated that the local Chapter would be unable to continue purchasing the property.

On October 1, 1974, without contacting House Fund, Brewer resold the property to a third party, Krebs. Krebs sold his interest in the property to Lenchner, who assigned his interest to Crowley.

In September, 1975, Brewer, having retained legal title, filed suit for strict foreclosure against House Fund. He dismissed this suit in December, 1976, because he determined foreclosure was not the proper remedy. During the period between September, 1975, and April, 1978, Brewer and House Fund engaged in a series of unsuccessful settlement negotiations. On August 25, 1977, Brewer filed a new action to quiet title. This suit was dismissed without prejudice for want of prosecution on December 27, 1978. The present action to quiet title was filed in March, 1980. The trial court granted Brewer's motion for summary judgment, denied House Fund's similar motion, and entered judgment quieting title in Brewer. House Fund appealed.

The issue in this case is whether the rights of a holder of a mortgage on a vendee's interest in real property are extinguished when the vendee abandons its interest in the property and the vendor has actual knowledge of the mortgagee's interest.

The trial court concluded that as a general rule a vendee, by voluntary relinquishment of its interest to the vendor, may not terminate a mortgagee's interest in a vendee's equitable title when the vendor has knowledge of that mortgage interest. However, because the mortgagee in this case, House Fund, was found to have neglected to assert its claim of an equitable mortgage for an unreasonable and unexplained length of time, which resulted in prejudice to the plaintiff, the court held that House Fund's claim was barred by laches.

The Court of Appeals found that Chapter's interest was voluntarily relinquished or abandoned, but held that because Brewer had knowledge of the equitable mortgage House Fund's interest was not extinguished by Chapter's abandonment. The Court of Appeals also held that Brewer must either pay off the equitable mortgage to obtain clear title or allow House Fund to purchase the property for the balance of the contract.

■      It is established law in Oregon that a vendee's interest may be extinguished by abandonment. In *Hull v. Clemens,* 200 Or 533, 267 P2d 225 (1954), we addressed the issue of abandonment by a vendee of his interest. In *Hull,* the vendee purchased real property for $9,000. A down payment of $1,500 was made and two annual installments of $810 were paid. Because of some serious financial setbacks, the vendee told the vendor that he wished to be released from the contract, and that it was his intention to give up the land and release his interest back to the vendor. He then vacated the property. The vendor resumed possession and resold the property to another. The court discussed the concept of abandonment:

"* * * * *

'* * * The interest of the vendee is equitable merely, and whatever puts an end to the equitable interest—as notice, an agreement of the parties, a surrender, an abandonment— places the vendor where he was before the contract was made.'

"* * * * *

'No mode of terminating an equitable interest can be more perfect than a voluntary relinquishment, by the vendee, of all rights under the contract, and a voluntary surrender of the possession to the vendor. The finding of the court shows that this took place in relation to the premises in question, and that the surrender was accepted by the vendor.'" 200 Or at 545-47, quoting *Jennisons v. Leonard,* 88 US 302, 309-10, 22 L Ed 539 (1874).

We concluded that under the facts of that case the vendee's manifest intent to abandon, coupled with actual acts of abandonment, extinguished any right of the vendee in the real property. We stated:

"In the case at bar, the Hulls' title—an unperfected equitable title—was inchoate when they quit the property. Therefore, it was subject to abandonment. * * * Abandonment has the novel phase that it is entirely unilateral—it requires action by only the possessor of the title, right or equity which it is proposed to abandon. Rights and equities are never abandoned in favor of anyone. Therefore, Clemens' attitude was immaterial." 200 Or at 549-51.

■      Chapter, an assignee, has no greater rights than the

vendee, its assignor. In Oregon a vendee holds only an equitable interest in the land subject to the land sale contract. The vendee's interest can be mortgaged, *Sheehan v. McKinstry,* 105 Or 473, 485, 210 P 167 (1922), but the mortgagee of a vendee's interest does not have a lien on the real property. *State Hwy. Comm. v. Demarest,* 263 Or 590, 609, 503 P2d 682 (1972); *Sanders v. Ulrich,* 250 Or 414, 416, 443 P2d 231 (1968).

The relationship between vendor, vendee and the mortgagee of the vendee's interest has been previously addressed by this court. At issue is what impact a vendee's abandonment has on a mortgagee of a vendee's interest.

In *Sheehan v. McKinstry, supra,* Sheehan had sold real property to McKinstry who later mortgaged his vendee's interest to a bank. In a suit for strict foreclosure, the court recognized that the vendee could mortgage his interest, but the mortgage would only be enforceable if the underlying contract was kept in force. We held that, upon termination of the contract, the mortgage would cease to be enforceable against the vendor and the property would be free and clear of any claims of the mortgagee. 105 Or at 485-86.

In *Merchant Land Co. v. Barbour,* 65 Or 235, 130 P 976, 132 P 710 (1913), the vendee, Graham, assigned one-half of his interest in a land sale contract to Barbour. Later, the vendee quitclaimed the entire property back to the vendor. The vendor brought suit to quiet title as to Barbour's claim of a mortgage interest in the real property. We discussed the relationship of the vendor, vendee and assignee of the vendee's interest as follows:

> "It will be observed that the writing executed by Graham November 8, 1890, and delivered to the defendant does not purport to be a conveyance of any interest in any land, neither does it convey the impression of having been agreed to by Merchant or of establishing any privity of contract between him and the defendant. At best, that instrument can be construed only as attempting to define contractual relations between Graham and Barbour. * * *

> "The pleading does not show any privity of estate or of contract with the plaintiff. * * * [Barbour's] grievance, if any, must be adjusted with the man with whom he contracted. His pseudo title cannot rise above its source, R.A. Graham. The latter divested himself of his estate by the deed already

mentioned, and with it fell the pretensions of ownership in which the defendant may have indulged. * * *

"* * * * *

"* * * Barbour, having no contract with Merchant has no claim upon him. Barbour has not agreed with Merchant to purchase nor to pay $90,000. Therefore, Merchant had no one to deal with other than Graham; and on March 20, 1894, when Graham quitclaimed to Merchant, he waived the demand provided for in the fifth paragraph of the contract, and terminated and surrendered it. Consequently Barbour could not object unless before that time he had tendered the purchase price of the land. * * *" 65 Or at 240-42.

In *Sanders v. Ulrich, supra,* the vendees assigned as security a partial interest in their contract with the vendor. The vendees defaulted on the land sale contract. In a suit for strict foreclosure a decree was entered allowing the vendees 60 days to pay the balance of the contract or be foreclosed of all their rights. The vendor accepted a quitclaim deed from the vendees and entered into possession. The assignee of the partial interest then claimed that her lien on the land was superior to the vendor's interest.

We held that the assignment of a partial interest as security was a mortgage against the vendees' interest, but that, as to the vendor, the assignee was not a mortgagee. The court observed:

"* * * [T]he [vendor] was not a party to the assignment, had no knowledge of the making of the loan by Mrs. Curtis to the purchasers until long after that transaction, and no knowledge of the execution of the assignment other than constructive notice of it when the instrument was recorded, more than a year after the contract of sale was entered into, and received no money from Mrs. Curtis. As to the plaintiff, Mrs. Curtis was not a mortgagee, but she stood in the shoes of the purchasers and her rights could rise no higher than theirs. * * * The plaintiff was under no obligation to Mrs. Curtis and the latter could demand nothing of the plaintiff except a deed upon tendering the purchase price of the land. * * * Her only claim, however, is that she has a lien on the property and that claim is without any support in law or the facts. If the purchasers are indebted to her, it is to them that she must look for satisfaction." 250 Or at 416.

In *State Hwy. Comm. v. Demarest, supra,* a vendee

assigned his interest in a purchase contract to secure a note. We held that the assignment created an equitable mortgage on the vendee's interest but did not create a mortgage lien on the real property. We stated:

> "The assignment by Malone to Hay was for the purpose of securing the Malone note and created an equitable mortgage as between Malone and Hay on the Malones' equitable title in the property being purchased. However, as to the vendor Demarest, the assignment by Malone does not give Hay as the assignee a mortgage lien on the property.

> "* * * * *

> "It is true that in *Sanders* the vendor did not know about the assignment of the purchase contract by the purchaser-assignor to the assignee, and in the instant case the trial court found that Demarest did know of the assignment. Assuming that finding to be true, we do not believe it changes the result.

> "Hay's rights under the assignment could not be greater than Malone's. * * *" 263 Or at 609-10 (citations omitted).

■ ■ The above cases consistently demonstrate that a unilateral act by the vendee can operate to cut off the rights of a party claiming through the vendee. In particular, *Sanders v. Ulrich, supra,* and *State Hwy. Comm. v. Demarest, supra,* demonstrate that abandonment by the vendee extinguishes the equitable mortgagee's interest, and that knowledge of the mortgagee's interest is irrelevant to the outcome.

There is no dispute that House Fund acquired an equitable mortgage on the Chapter's vendee's interest by virtue of the recording of the note with a legal description attached. We also agree that Chapter abandoned its interest.

■ ■ Before Chapter abandoned the contract, House Fund, as an equitable mortgagee, had the right to step in to ensure that the underlying contract remained in force. The time limit for the exercise of this right is discussed in *Sheehan v. McKinstry, supra,* as follows:

> "By defendant's partial compliance with and performance of the terms of the contract an equitable interest or estate in the land had become vested in the defendant and this equitable interest or estate was subject to mortgage by him, *but the enforceability of such mortgage, as a lien against the land, depended upon the condition that the contract be kept in*

*force by the subsequent performance of its terms."* 105 Or at 485 (emphasis supplied).

■■ Once the contract was abandoned by Chapter, the contract was no longer in force and House Fund lost any rights in the property. There was no contractual relationship between Brewer and House Fund. Knowledge alone did not create such a relationship. It was up to House Fund to protect its own interest. The vendor had no duty to protect the mortgagee's interest. When House Fund chose not to take the proper legal steps necessary to protect its interest before the contract was abandoned, any interest House Fund had was extinguished as a matter of law when Chapter abandoned its vendee interest.

The Court of Appeals is reversed. The trial court is affirmed for the reasons set forth in this opinion.