## NEWMAN et al,
*Respondents,*

*v.*

## RANDALL,
*Appellant.*

## (A8603-01394; CA A44240)

753 P2d 435

J. Bradford Shiley, Portland, argued the cause and filed the briefs for appellant.

Michael Scott Evans, Portland, argued the cause for respondents. With him on the brief were Gary I. Grenley and Grenley, Rotenberg, Laskowski, Evans & Bragg, P.C., Portland.

Before Warden, Presiding Judge, and Joseph, Chief Judge, and Graber, Judge.

GRABER, J.

## GRABER, J.

This is a declaratory judgment action to construe a land sale contract. The issue is the amount of a balloon payment that plaintiffs were to pay defendant as trustee of the Randall Company Profit Sharing Trust (defendant),[1] on January 15, 1986. The trial court held that the payment was the approximately $20,000 plaintiffs tendered, rather than the approximately $139,000 defendant demanded. Defendant appeals, and we affirm.

In 1966, Randall built an apartment complex in southeast Portland. The predecessor of Far West Federal Bank provided the financing; Far West Federal Bank retains a mortgage on the property. In 1970, Randall sold the property for $185,000 to Homeland, Inc., by a land sale contract (the 1970 contract). Homeland's vendee's interest in the contract passed, by various assignments, to the Hardys, to whom it was assigned on June 1, 1978. That same day the Hardys sold the property to plaintiffs for $239,500 by a new land sale contract (the 1978 contract). The 1978 contract called for down payments, followed by monthly payments that were slightly larger than the payments the Hardys continued to make to Randall under the 1970 contract. The 1978 contract then provided:

> "On or before January 15, 1986, [plaintiffs] shall assume the balance then owing under the mortgages and contract described in paragraph 4 of this contract and pay [the Hardys] the difference between the balances owing by [the Hardys] under the mortgages and contract described in paragraph 4 and the balance owing to [the Hardys] under this contract."

Paragraph 4 listed the mortgage to Far West Federal Bank, the vendor's interest in the 1970 contract, and a mortgage of the vendor's interest. The latter mortgage was satisfied before January 15, 1986.

In 1981, by a series of assignments and deeds, Randall transferred the vendor's interest in the 1970 contract to the defendant trust and quitclaimed to it his rights to the property. In 1983, the Hardys assigned their vendee's interest in the 1970 contract and their vendor's interest in the 1978

---

[1] We will refer to Randall in his capacity of trustee as "defendant" and in his individual capacity as "Randall."

contract to the trust. The Hardys also gave the trust a quitclaim deed to the property. Plaintiffs thereafter made their payments on the 1978 contract directly to the trust.

Defendant argues that, as a result of these actions, the trust owned all of the interests in the 1970 contract. Therefore, according to defendant, the 1970 contract disappeared, under the doctrine of merger, and there was no balance owing under it on January 15, 1986. That being so, defendant concludes, plaintiffs were required to pay the full balance of the 1978 contract on that date, less only the approximately $15,000 remaining on the Far West Federal Bank mortgage.

Plaintiffs assert that there was no merger, that the 1970 contract remained in effect, and that they could subtract the amount owed on it from the required balloon payment and assume the continuing monthly payments. Plaintiffs make several arguments in support of their position. We need to consider only one: that defendant does not in fact own all of the interests in the 1970 contract. If that is true, there can be no merger. *See Phair v. Walker,* 48 Or App 641, 644-45 n 3, 617 P2d 616, *rev den* 290 Or 271 (1980).

Plaintiffs argue:

"After the sale to Plaintiffs in 1978, Hardy's interest in the 1970 Contract was nothing more than the right, as vendor of the 1978 Contract, to receive payments under the terms of the 1978 Contract, and to take certain actions in the event of default by Plaintiffs and the 1970 Contract. Plaintiffs' interest was the equitable interest of a vendee of the 1978 Contract, and included the right to possession of the Subject Property and the right to fee title upon full performance under the 1978 Contract. Plaintiffs' interests are derived from the 1970 Contract as well as the 1978 Contract, and Plaintiffs have an equitable interest in both. Defendant does not possess all of the vendor's and vendee's interests in the 1970 Contract."

Although plaintiffs cite no authority in support of their position, it is correct. The possessor of a vendee's interest under a land sale contract may do with it many of the things the owner of a fee may do. The interests the vendee may create are equitable rather than legal and attach to the contract, not to the land, but they are in many respects similar to liens or other interests in a fee. Thus, the vendee may mortgage the interest,

*Sheehan v. McKinstry et al.,* 105 Or 473, 485-86, 210 P 167 (1922), or assign it, for security or otherwise. *Sanders v. Ulrich,* 250 Or 414, 443 P2d 231 (1968). Similarly, the holder of a vendee's interest may enter into a new contract to sell the property. *See* ORS 93.935(1). The question here is the effect of such a new contract on the ownership of the vendee's interest. It is, again, similar to the effect of a contract to sell the fee on the ownership of that fee.

A person holding legal title to land who sells it by land sale contract thereby vests the equitable title in the vendee. *Grider v. Turnbow,* 162 Or 622, 641-42, 94 P2d 285 (1939). The vendor retains the legal title as security and as a trustee for the vendee. *Seguin et al v. Maloney-Chambers,* 198 Or 272, 284-85, 253 P2d 252, 256 P2d 514 (1953). In the same fashion, a vendee who contracts to sell the vendee's interest to a new purchaser thereafter holds the vendee's interest in the original contract in trust for the purchaser under the new contract. 92 CJS, "Vendor and Purchaser," § 314(c)(3). As a result, the new purchaser, or subvendee, has equitable ownership of the original vendee's interest. It follows that the original vendee can no more divest the subvendee's interest by assignment of the original vendee's interest than the original vendor can divest the original vendee of its interest by assignment of the original vendor's interest.

This conclusion would be inescapable but for cases which appear to hold that an assignment or mortgage of a vendee's interest does not survive the conveyance of the vendee's interest to the vendor. If those cases are followed literally, a contract purchaser of a vendee's interest would lose all interest in the property upon the vendee's reconveyance. All of the mortgage cases, and most of the assignment cases, may be distinguished. They involved what were really only security interests that created a lien on the original vendee's equitable title, rather than transfers. *See, e.g., Estate of Brewer v. Iota Delta Chapter,* 298 Or 383, 692 P2d 597 (1984); *State Hwy. Comm. v. Demarest,* 263 Or 590, 608-611, 503 P2d 682 (1972); *Sanders v. Ulrich,* 250 Or 414, 443 P2d 231 (1968); *Sheehan v. McKinstry et al, supra.*

In *Merchant Land Co. v. Barbour,* 65 Or 235, 130 P 976, 132 P 710 (1913), however, the assignee received the assignment of half of the vendee's interest as an outright

transfer. The Supreme Court, nevertheless, held that the assignment did not survive the vendee's later quitclaim to the vendor. The equities in the case weighed against the assignee, and we would question the continuing force of the decision, were it not for *Estate of Brewer v. Iota Delta Chapter, supra.* There, the court relied on the reasoning of *Merchant Land Co. v. Barbour, supra. Estate of Brewer* involved an equitable mortgage and a vendee's abandonment of its interest, not a new contract and continuing performance under the original contract, but the court did not treat those differences as significant.

A literal application of *Merchant Land Co. v. Barbour, supra,* makes any assignment or other transfer of a vendee's interest potentially worthless. Here, for instance, if the 1983 assignment conveyed the entire vendee's interest in the 1970 contract, as defendant urges, plaintiffs would lose their rights in the land, even if they fully perform the 1978 contract. The vendee's interest will have disappeared and so, necessarily, will have the interest of any person claiming under the vendee. Indeed, even if the Hardys had not transferred the vendee's interest to defendant, the original vendee or any intermediate assignee could do so and thereby cut off the rights of all later assignees, including the Hardys as well as plaintiffs. The logic of defendant's position would render vendee's interests practically unsaleable, and we doubt that the Supreme Court intended such a result. It is clear that the legislature did not.

In response to the decision in *Estate of Brewer v. Iota Delta Chapter, supra,* the legislature enacted ORS 93.935 - ORS 93.945 to protect claimants under a vendee's interest when the holder of that interest has abandoned or reconveyed it because of a default. Under ORS 93.935,[2] which applies to

---

[2] ORS 93.935 provides:

"(1) In the event of a default under a contract for conveyance of real property, the recorded interest, lien or claim of a person with respect to the real property, by virtue of an assignment, conveyance, contract, mortgage, trust deed or other lien or claim from or through a purchaser, shall not be affected by the purchaser's abandonment or reconveyance to the seller unless the person is given notice in the manner specified in ORS 93.915.

"(2) The notice shall specify the nature of the default, the amount of the default if the default is in the payment terms, the date after which the purchaser's interest in the real property will be abandoned or reconveyed to the seller and the

all land sale contracts no matter when they were executed, Or Laws 1985, ch 718, § 10, the vendor must give the holder of a later recorded contract interest notice and an opportunity to cure the default. If the holder of the later interest cures, the purchaser's abandonment or reconveyance does not affect the later interest. By overturning *Estate of Brewer v. Iota Delta Chapter, supra,* the legislature also overturned the principle on which it was based. The statute establishes a policy of protecting holders of later interests from the pitfalls that *Merchant Land Co. v. Barbour, supra,* would otherwise create. Although the legislature did not explicitly protect the holders of a later interest after a *non*-default reconveyance, it did so implicitly. The statute is a legislative recognition that those who hold under vendees may retain their interests so long as the vendor's interests under the original contract are protected.

In short, the Hardys' assignment of the vendee's interest in the 1970 contract and their quitclaim deed to defendant did not divest plaintiffs of their equitable ownership, under the 1978 contract, of the vendee's interest in the 1970 contract. When the Hardys assigned and quitclaimed their interests in the 1970 contract to defendant, they transferred only their obligation as trustees to convey the property to plaintiffs on plaintiffs' full compliance with the 1978 contract. The equitable title to the vendee's interest in the 1970 contract was in plaintiffs and was beyond the Hardys' ability to transfer. Therefore, there was no merger. The trial court correctly determined the amount of the balloon payment.

---

name and address of the seller or the attorney for the seller. The period specified in the notice after which the purchaser's interest will be abandoned or reconveyed to the seller may not be less than:

"(a) Sixty days, when the purchaser has reduced the unpaid balance to an amount greater than 75 percent of the purchase price;

"(b) Ninety days, when the purchaser has reduced the unpaid balance to an amount which is more than 50 percent but less than 75 percent of the purchase price; or

"(c) One hundred twenty days, when the purchaser has reduced the unpaid balance to an amount which is 50 percent or less of the purchase price.

"(3) If the person having an interest, lien or claim with respect to the real property, by virtue of an assignment, conveyance, contract, mortgage, trust deed or other lien or claim from or through a purchaser whose interest arises under a contract for conveyance of real property, cures the default as provided in ORS 93.920 then such person's interest, lien or claim with respect to the real property shall not be affected by the purchaser's abandonment or reconveyance to the seller."

Affirmed.