Argued and submitted May 23, 1990, reversed and remanded February 20, 1991

Edgar D. CRANE
and Forrest D. Crane,
*Appellants,*

*v.*

Jimmy L. MITCHELL
and Florence E. Mitchell,
Klamath Production Credit Association
and Interstate Production Credit Association,
*Defendants,*

*and*

STATE OF OREGON,
by Director of Veterans' Affairs,
*Respondent.*

(88-1466-E-2; CA A60615)

806 P2d 698

Steven P. Pickens, Medford, argued the cause and filed the brief for appellants.

Joseph H. Hobson, Jr., Keizer, argued the cause for respondent. With him on the brief were E. Shannon Johnson and Lien & Hobson, Keizer.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

## NEWMAN, J.

Appellants (the Cranes) appeal from the summary judgment for respondent Oregon Department of Veterans' Affairs (DVA) in an action that the Cranes brought to foreclose what they claim is a lien in the amount of $11,635.49 on real property of defendants Mitchell.[1] In its answer, DVA alleged affirmative defenses of the Statute of Limitations, laches, novation and equitable subrogation. DVA also alleged by counterclaim and cross-claim that, if the Cranes had a lien on the real property, the Mitchells would be in default on their mortgage to DVA; in that event, DVA asked that its mortgage be foreclosed with priority as to Cranes' lien to the extent that the Mitchells had used the DVA loan to acquire a deed to the real property. The Cranes and DVA each filed motions for summary judgment. The court ruled that the Cranes do not have a lien on the real property and are not entitled to summary judgment but did give a summary judgment to DVA. The Cranes assign the summary judgment rulings as errors. We reverse and remand.

The facts are undisputed. On January 28, 1974, the Mitchells purchased real property in Jackson County from the Marshalls under a recorded land sale contract. On February 4, 1978, the Cranes sold a catering business located in that county to the Mitchells. As evidence of the sale, the parties executed a "Purchase Money Security Agreement" that is both a sales and a security agreement. It recites that, as security for the deferred balance of the purchase price of the business, the Mitchells will assign to the Cranes their "purchasers' interest" in the land sale contract with the Marshalls.[2] Pursuant to that agreement, the Mitchells and the Cranes signed an "Assignment for Security Purposes" (the assignment), which provides that the Mitchells, as assignors,

"do grant, bargain, sell and assign and convey unto the said Assignees [the Cranes], their heirs and assigns, all of the right, title and interest of the Assignors in and to that certain Agreement of Sale bearing date, the 28th day of January, 1974, between [the Marshalls and Mitchells] * * * by way of which said Contract of Sale, the Seller therein agreed to sell to the

---

[1] Of the original defendants, only DVA moved for summary judgment.

[2] The Mitchells also pledged personal property of the catering business as security for the defendants' purchase.

Buyer therein, and their assigns, the real property * * * described as follows * * * [a description of the real property follows].

"* * * * *

"[T]he Assignors do hereby covenant to and with the Assignees that they are the owners and holders of said Agreement of Sale; that they have a good and unencumbered right to execute this assignment.

"* * * * *

"The Assignors herein covenant and agree to make all payments falling due under the terms of the agreement of sale herein assigned in strict accordance with the provisions thereof; provided however, that in the event that the Assignors herein default in the terms, coverages and conditions of that certain Purchase Money Security Agreement, herein referred to, the Assignees herein shall have the right to assume full ownership of the interest herein assigned and foreclose the interest of the Assignors in the manner provided by law for judicial foreclosure of mortgages.

"Upon faithful performance by the Assignors herein of all of the terms, covenants and conditions of the Purchase Money Security Agreement above referred to, the within assignment shall be null and void, and the Assignees herein shall release their interest in and to the contract of sale herein assigned in writing, delivered to Assignors."

Both parties acknowledged the assignment. On February 9, 1978, it was recorded in the manner that mortgages are recorded.

On August 13, 1979, the Mitchells took a deed to the real property from the Marshalls, paid off the balance of the land sale contract with a portion of a $48,000 loan that they received from DVA and gave DVA a mortgage as security.[3] At that time, the assignment and the purchase money security agreement were in full force and effect. In August, 1981, the

---

[3] DVA recorded its mortgage on August 13, 1979. It stated in its motion for summary judgment that the Mitchells used $14,583.82 of the $48,000 loan to pay off the land sale contract with the Marshalls and that they used the balance to improve the real property. The Mitchells also executed mortgages to defendant Klamath Production Credit Association, securing payment of a note for $24,945, recorded on March 20, 1985, and to defendant Interstate Production Credit Association, securing payment of a note for $13,588, recorded on July 28, 1987.

Mitchells sold the catering business and executed an "Agreement for Sale" with the Darrs, the purchasers. Under that agreement, the Darrs were to make payments to the Cranes under the purchase money security agreement. The Cranes were not parties to the sale agreement, and they did not receive any payments from the Darrs or the Mitchells after November, 1981. On March 8, 1988, the Cranes notified the Mitchells that they were in default under the purchase money security agreement. On May 13, 1988, the Cranes brought this action to foreclose the purchase money security agreement in the manner provided for judicial foreclosure of mortgages.

On the cross-motions for summary judgment, the court ruled that the Cranes do not have a lien on the real property, because

> "a vendee only holds an equitable interest to land subject to a land sale contract and that an assignment of the vendee's interest would only assign the interest in his contract and not an interest in the land itself."

The court granted summary judgment to DVA and denied summary judgment to the Cranes. The court did not consider DVA's affirmative defenses or its cross-complaint and counterclaim for foreclosure of its mortgage.

The parties have narrowly framed the issues before us. The Cranes do not assert that the assignment gave them a lien on the real property before the Mitchells took the deed from the Marshalls. According to the Cranes, the court erred when it granted DVA summary judgment and denied it to them because, under the assignment, they acquired a lien on the real property when the Mitchells got the deed. They also assert that the court erred when it did not hold that their lien is superior to the DVA mortgage. DVA responds that the Cranes never acquired a lien against the real property. It asserts that the assignment gave Cranes "rights only in the contract" and that, when the Mitchells paid off the contract and acquired title, the Cranes had "nothing." DVA does not assert, however, that, if the Cranes did acquire a lien on the real property, it is, nonetheless, entitled to summary judgment. Rather, DVA asserts that, even if the Cranes did acquire a lien, the court did not err in denying summary judgment to them, because there are genuine issues of material fact with respect to DVA's affirmative defenses. DVA makes

no assertion here with respect to its cross-claim or counterclaim for foreclosure.

■        We conclude that the court erred when it granted summary judgment to DVA. The Cranes acquired a lien on the real property when the Mitchells acquired the title. Oregon cases have addressed the rights of the mortgagee or assignee of the vendee when the vendee has not yet acquired title and the *vendor* forecloses or acquires title through reconveyance or abandonment by the vendee. *See Estate of Brewer v. Iota Delta Chapter,* 298 Or 383, 692 P2d 597 (1984); *Sanders v. Ulrich,* 250 Or 414, 443 P2d 231 (1968); *see also Newman v. Randall,* 90 Or App 629, 753 P2d 435, *rev den* 306 Or 155 (1988).[4] That is not the case before us. Here, the Marshalls, the vendors, did not foreclose the land sale contract, and the Mitchells, the vendees, did not abandon or reconvey their interest. On the contrary, the Mitchells fully performed under the contract and acquired title from the Marshalls.

The assignment contemplates that the Mitchells could pay off the Marshalls under the land sale contract and acquire title and that, if the purchase money security agreement was still in effect, the Cranes' security interest would survive that event. The assignment provides that the security interest becomes "null and void," and the Cranes will release the Mitchells from that interest, only if the Mitchells faithfully perform "all of the terms, covenants, and conditions of the Purchase Money Security Agreement." The Cranes' security interest under the assignment and the purchase money security agreement, therefore, was to remain in effect until the Mitchells fully performed their obligations to the Cranes.

The assignment also provides that the Mitchells will make all payments to the Marshalls under the land sale contract. The Cranes would not have wanted to obligate the Mitchells to perform their contract with the Marshalls if, when the Mitchells performed and acquired a deed, the Cranes' interest under the assignment would be extinguished.

---

[4] As stated in *Estate of Brewer v. Iota Delta Chapter,* 69 Or App 82, 87, 686 P2d 393 (1984), *rev'd on other grounds* 298 Or 383, 692 P2d 597 (1984):

"[T]he holder of an equitable mortgage on a vendee's interest under a land sale contract has no lien on the property."

On the contrary, the assignment contemplated that, if the Mitchells were to acquire the deed, the Cranes' security interest would then be, and only be, in the real property.

The assignment also provides that, if the Mitchells default on payments under the purchase money security agreement, the Cranes would have the right to foreclose "in the manner provided by law for a judicial foreclosure of mortgages." The assignment contemplates, therefore, that, at some point, the Cranes would acquire a security interest in the real property under the assignment. Indeed, the Mitchells and the Cranes acknowledged and recorded the assignment in the same manner as a real property mortgage. *See* ORS 93.710(1). Accordingly, the court erred when it granted summary judgment to DVA, because the assignment gave the Cranes a lien on the real property when the Mitchells acquired the deed from the Marshalls.

■ The court did not err, however, when it denied summary judgment to the Cranes.[5] Although they acquired a lien on the real property, they are not entitled to summary judgment, because they have not established that there are no genuine issues of material fact with respect to DVA's affirmative defenses, as, for example, laches. In *Mattson v. Commercial Credit Business Loans*, 301 Or 407, 419, 723 P2d 996 (1986), the court said:

> "In order to prevail on [the affirmative] defense of laches, [a] defendant must have been able to establish the following three elements: (1) plaintiffs delayed asserting their claim for an unreasonable length of time, (2) with full knowledge of all relevant facts (and laches does not start to run until such knowledge is shown to exist), (3) resulting in such substantial prejudice that it would be inequitable for the court to grant relief." (Citation omitted.)

The parties agree that the Cranes did not commence foreclosure until over seven years after the Mitchells and the Darrs stopped making payments to them. The Cranes did not demonstrate, under ORCP 47, that there are no genuine issues of fact about whether, when they commenced foreclosure, they had waited an unreasonable length of time, had earlier had full

---

[5] We may review both the granting and denial of cross-motions for summary judgment under circumstances such as these. *Cochran v. Connell,* 53 Or App 933, 939, 632 P2d 1385, *rev den* 292 Or 109 (1981).

knowledge of relevant facts or had substantially prejudiced DVA by their delay.[6]

Reversed and remanded.

---

[6] Because there are genuine issues of material fact with respect to laches, we need not address the remaining affirmative defenses.