**In re Stephen D. COX, dba Games Emporium, Debtor.**

**Bankruptcy No. 684–08496–W7(o).**

United States Bankruptcy Court, D. Oregon.

Jan. 7, 1987.

Richard A. Carlson, Eugene, Or., for plaintiff.

Christine Van Eck, Portland, Or., for defendant.

G. Jefferson Campbell, Jr., Medford, Or., for Trustee.

Craig K. Edwards, Portland, Or., for creditors.

## MEMORANDUM OPINION

POLLY S. WILHARDT, Bankruptcy Judge.

This matter came on for hearing on August 29, 1986, upon a motion for relief from the automatic stay or in the alternative for adequate protection payments filed by the United States National Bank and United States Credit Corporation (Movants). Paul Lansdowne, Inc., Trustee in the above-captioned bankruptcy proceeding

(Trustee) opposed relief on the basis that Movants do not have a properly perfected interest in the claimed property capable of defeating a trustee in bankruptcy. The parties requested and were given additional time to prepare and serve post hearing memoranda.

The facts as stipulated to by the parties are as follows:

1. On December 15, 1978, Donald Bergen and Leroy Gaston, vendors, entered into a land sale contract with Ted and Donna Wolfe, vendees. A memorandum of this land sale contract was recorded on December 15, 1978, in Vol. 269, p. 177 of the Deschutes County Deed Records.

2. On January 15, 1979, Ted and Donna Wolfe borrowed $15,000.00 from U.S. National Bank, securing repayment by giving the bank a mortgage containing the legal description of the land covered by the land sale contract. This mortgage was recorded in Volume 261, page 574 of the Deschutes County Mortgage Records on January 22, 1979.

3. On February 21, 1979, Leroy Gaston quitclaimed his interest as vendor in the land sale contract to Ronald Bergen, his co-vendor. This quitclaim deed was recorded in Volume 294, page 180 of the Deschutes County Deed Records.

4. On February 2, 1981, Ted and Donna Wolfe borrowed $45,000.00 from United States Creditcorp, securing repayment by giving Creditcorp a deed of trust containing the legal description of the land covered by the land sale contract. This deed of trust covered the same parcel of land as that covered by the U.S. National Bank mortgage, as well as a five foot strip of land excluded from the U.S. National Bank's mortgage. This five foot strip of land adjoins and runs adjacent to a portion of the larger parcel of land. It was not subject to the original land sale contract entered into between Bergen, Gasten, and Ted and Donna Wolfe. It was owned in fee by the Wolfes. Thus while the U.S. National Bank's mortgage was secured only by the Wolfes' interest in the Bergen-Gasten land sale contract, the U.S. Creditcorp's trust deed covered both the Wolfes' interest in the Bergen-Gasten land sale contract, as well as the Wolfes' fee ownership interest in the five foot strip. On February 3, 1981, the trust deed was recorded in Volume 307, page 334 of the Deschutes County Mortgage Records.

5. On December 8, 1982, Ted and Donna Wolfe executed three documents with Stephen D. Cox, debtor in the above-captioned proceeding (Debtor). The first of these was a land sale "subcontract" conveying the Wolfes' interest in both the property covered by the original land sale contract and the five foot strip of land to the Debtor. This "subcontract" provided that the Debtor would assume the mortgage to U.S. National Bank and the trust deed to U.S. Creditcorp. This land sale "subcontract" was not recorded.

The second document executed by the parties was an assignment of contract in which Ted and Donna Wolfe assigned all of their "right, title and interest" in the original land sale contract to the Debtor. This assignment of contract was recorded in Volume 366, page 182 of the Deschutes County Deed Records on December 23, 1982. This assignment made no mention of U.S. National Bank's mortgage or of U.S. Creditcorp's trust deed.

The third document executed by the parties was a warranty deed signed by Ted and Donna Wolfe conveying to the Debtor a parcel described as the East 5 feet of the West 25 feet of Lot 2, Block 160 in Second Addition to Bend Park, City of Bend, Deschutes County, Oregon (the 5 foot strip) which was filed in Volume 366, page 183 of the Deschutes County Deed Records on December 23, 1982. As of May 20, 1985, the Deschutes County Deed Records showed that the debtor owned this five foot strip in fee simple.

6. On December 13, 1982, Donna Wolfe quitclaimed her vendee's interest in the land sale contract to Ted Wolfe. This quitclaim deed was recorded on December 23, 1982, in Volume 366, page 181 of the Deschutes County Deed Records.

7. The parties have stipulated that as of August 29, 1986, the total due under all possible encumbrances on the land, including the five foot strip, was $117,399.68. The encumbrances on the property are as follows:

a. $35,931.62 remains owing to Ronald Bergen on the original land sale contract. This figure includes principal plus interest calculated through August 29, 1986.

b. $5,819.10 remains owing to U.S. National Bank on its mortgage.

c. $59,928.86 remains owing to U.S. Creditcorp on its trust deed.

d. Property taxes on the parcels are reflected in three accounts for three tax lots as follows:

$6,223.46 principal, $1,464.16 interest;

$6,210.58 principal, $1,457.70 interest;

$21.45 principal, $3.15 interest.

8. Movants' appraiser values all of the property, including the five foot strip, at $135,000.00.

9. The tax assessed value of all of the property is $158,000.00.

10. The Trustee has listed all of the property for sale at $156,000.00.

11. The Trustee has been renting all of the subject property, on which sits a multi-family complex, under an order authorizing the Trustee to operate the Debtor's real property management business pending orderly liquidation.

12. After the hearing on August 29, 1986, this court entered an order dated September 2, 1986, which order provided that the Trustee immediately tender to Ronald Bergen adequate protection payments of the amount of prospectively accruing interest due him under the terms of the land sale contract. The order further provided that in the event Mr. Bergen refused such tender, the Trustee should commence putting aside in a separate interest bearing account funds sufficient to pay the accruing interest on the obligation to Ronald Bergen.

This case presents the court with the necessity of addressing whether the trustee in bankruptcy, with powers granted it under 11 U.S.C. § 544(a), can cut off the movants' interests arising under a mortgage and a trust deed, respectively, of a vendee's interest in a land sale contract?

To appropriately address this question the court has analyzed the following difficult legal issues it raises in the order listed.

1. What is the nature at common law and under Oregon case law of the movants' interests in the vendee's interest in the Bergen land sale contract?

2. At common law and under Oregon case law what priority do the movants' interests have over subsequent judicial lien creditors and bona fide purchasers?

3. Does recording under the provisions of recently passed and amended Oregon statutes provide the movants protection against the interests of subsequent judicial lien creditors and bona fide purchasers?

4. Under bankruptcy law what role does notice play to defeat the trustee's position under § 544(a)?

For purposes of the following analysis this court will refer to the movants as the "mortgagees" although one creditor has used a deed of trust as a security device. This is because the court believes the movants are in an identical position under the analysis and the form of their security device is irrelevant.

Before the court addresses the nature of the movants' interests in the vendees' interest in the land sale contract it needs to clarify an issue it is not addressing and why it has chosen not to. The movants' memoranda in support of their position indicate their desire the court first identify the nature of the vendees' interest in the Bergen land sale contract. That is because an application of the doctrine of equitable conversion to the vendee's interest is a crucial foundation for the layers of legal argument the movants espouse.

Through the years the Oregon Supreme Court on numerous occasions has analyzed the nature of both a vendor's and a vendee's interest in a contract of sale for real estate. A review of those cases indi-

cates the court has not been consistent in its treatment of the nature of those interests. Close study reveals the confusion surrounding this subject has arisen because at the heart of any analysis in this area of the law necessarily lies the elusive doctrine of equitable conversion. The doctrine is, as its name indicates, one which arose in equity. As is the nature of the equity court, it may apply the doctrine as it believes the facts before it require to bring about justice and fairness to the parties. "Equitable conversion is not a condition of property for all purposes, but is only a name given to a situation resulting from the application of equitable doctrines to special states of facts." Pound, *The Progress of the Law*, 33 Harv.L.Rev. 813, 831 (1920) *cited with approval in Heider v. Deitz*, 234 Or. 105, 114, 380 P.2d 619, 624 (1963). If justice and fairness are the court's primary goals its holdings probably will not reveal doctrinal consistency.

A definition of the doctrine is useful as a starting point in understanding the state courts' case law. I believe an accurate definition is as follows:

> Upon execution of a valid, enforceable contract for the sale of realty the purchaser obtains the equitable, beneficial interest in the realty. The seller retains bare legal title to the property and the right to receive payments under the contract. The seller's legal title secures his right to the payments under the contract and is treated as a mortgage.[1]

This definition seems clear until one attempts to apply it to the rights, powers, duties and liabilities of the contracting parties, their heirs, their creditors and subsequent purchasers. Under the doctrine the vendor would be held as having only a personal property interest in the contract of sale secured by his naked legal title. He does not have an interest in the land itself.

*Panushka, supra*, 221 Or. at 145, 349 P.2d at 450.

In Oregon the supreme court has clearly applied the doctrine in a few cases addressing the rights and obligations of the contracting parties. *City of Reedsport v. Hubbard*, 202 Or. 370, 274 P.2d 248 (1954); *Reynolds Aluminum v. Multnomah*, 206 Or. 602, 287 P.2d 921 (1956); *Contra, Powell v. Dayton*, 12 Or. 488, 8 P. 544 (1885); *Huebener, supra*, 186 Or. at 508, 207 P.2d at 1136. It has been less willing to apply the doctrine in cases addressing the rights of the parties' creditors. *May v. Emerson*, 52 Or. 262, 96 P. 454, 96 P. 1065 (1908); *Pedersen v. Barkhurst*, 139 Or. 483, 10 P.2d 347 (1932); *Heider, supra*, 234 Or. 105, 380 P.2d 619.

The mortgagees recognize if this court were to determine the vendee's interest in the property in this case were a personal property interest the trustee would prevail, as they did not perfect their interest pursuant to the provisions of Article 9 of the Uniform Commercial Code. "[A]n unperfected security interest is subordinate to the rights of a person who becomes a lien creditor before the security interest is perfected." ORS 79.3010(1)(b).

■ On the other hand they believe if this court were to apply the doctrine and find the vendee had an equitable beneficial interest in the land itself they could prevail over the trustee. That belief is based on a second argument that the mortgagees, by means of protection granted them by Oregon statutes hold a status equal to that of the vendee vis a vis the contract vendor and all other third parties. The court believes the mortgagee's second legal argument is incorrect. Because the mortgagees' argument fails on this second level the application of the doctrine to the facts in this case is of no aid to them.

---

1. The Oregon court has been inconsistent in its position as to whether the vendor should be treated as holding the property as trustee for the vendee. *Huebener v. Chinn*, 186 Or. 508, 524–25, 207 P.2d 1136, 1143044 (1949); *Panushka v. Panushka*, 221 Or. 145, 150, 349 P.2d 450, 454 (1960). I believe the better view is the vendor is not a trustee as that term is used in the law of trusts. H. Tiffany, *The Law of Real Property*, § 308 (3d ed. 1939). The courts' lack of clarity on that point, however, is not fatal to an understanding of its application of the doctrine through the years.

Solely for purposes of analyzing the issues which this court believes are crucial to its conclusions, however, this court will assume the doctrine does apply. The vendees, Wolfes, shall be deemed to be the equitable owners of the land with a real property interest in the land itself.

In Oregon a vendee's equitable interest in land may be mortgaged. *Lovejoy v. Chapman*, 23 Or. 571, 32 P. 687 (1893); *Sheehan v. McKinstry*, 105 Or. 473, 210 P. 167 (1922); *Estate of Brewer v. Iota Delta Chapter*, 298 Or. 383, 692 P.2d 597 (1985). The vendee's interest in the land sale contract may be assigned as security. *Sanders v. Ulrich*, 250 Or. 414, 443 P.2d 231 (1968); *State Highway Commission v. Demarest*, 263 Or. 590, 503 P.2d 682 (1972); *Crowhurst v. Button*, 54 Or.App. 989, 636 P.2d 1023 (1981). Although this court has found no case wherein the Oregon Supreme Court has, in fact, addressed the issue, it would appear that if the court applies the doctrine of equitable conversion, or assumes an application without addressing the issue, it treats a vendee's assignment for security of his interest in a land sale contract (on the face of it a contract right and thus personalty) as a mortgage of the vendee's equitable interest in the land itself. "[a] land sale contract is not just a contract between two parties; it affects the land to which it relates." *Braunstein v. Trottier*, 54 Or.App. 687, 635 P.2d 1379 (1981). That is, the court does not seem concerned about the *form* of the security device. *Demarest, supra*, 263 Or. at 590, 503 P.2d at 682; *Sanders, supra*, 250 Or. at 414, 443 P.2d at 231.

Whether the form of the security device has been an assignment of the vendee's interest in the land sale contract or a mortgage on the vendee's equitable interest in the land, the Oregon court has consistently held that the secured party does not have a lien on the real property which is enforceable *at law*. Its reasoning is as follows:

The secured party has no contractual relationship with the vendor. Therefore any rights he has in the property are dependent upon his contractual relationship with the vendee. As the vendee has only an equitable interest in the land he is in a position to grant nothing greater than an equitable mortgage on the land. The secured party's rights in the property can rise no higher than the vendee's. *Brewer, supra*, 298 Or. at 387, 388, 692 P.2d at 599; *Sanders, supra*, 250 Or. at 416, 443 P.2d at 232. As between the vendee and secured party the lien may be enforced in equity. However, the vendee may, through his unilateral action (whether by abandonment as in *Brewer, supra*, 298 Or. at 383, 692 P.2d at 597; or by deeding, as in *Sanders, supra*, 250 Or. at 414, 443 P.2d at 231; or by inaction-failure to redeem the property under strict foreclosure, as in *Sheehan, supra*, 105 Or. at 473, 210 P. at 167) lose his equitable interest in the property. In that event the secured party can look only to the vendee for damages. Whether the vendor has knowledge of the security interest is irrelevant, as the vendor, being under no contractual relationship with the secured party, owes him no duty. *Brewer, supra*, 298 Or. at 391, 692 P.2d at 601.

The court consistently has used the term "equitable mortgage" to describe the interest the vendee's secured party has in the property. The nature and incidents of equitable mortgages is described in 59 C.J.S. *Mortgages* § 13. In fact, 59 C.J.S. *Mortgages* § 13 is specifically referred to in *Demarest*. There must be a debt and an intent to create a lien on real estate as security for payment of the debt. The mortgagor must have a mortgagable interest in the property sought to be charged as security. The name or the form of the transaction is unimportant. The mortgage, being equitable, is enforceable by a court of equity. The equity court will give effect to the parties' intentions although the conveyance may lack the formal requisites of a mortgage at law. Corpus Juris Secundum lists several transactions which constitute equitable mortgages. One listed is the conveyance, legal in its form, of an equitable estate as security for the payment of money. Another is the assignment of the interest of a vendor or vendee in a contract for

the sale of land as security for a debt. 59 C.J.S. *Mortgages* § 14.

■ The movants each hold what would have been defined at common law and under Oregon case law as an equitable mortgage on the vendee's interest in the Bergen land sale contract. There is no dispute the Wolfes owed legitimate debts to each lender which the parties intended would be secured by the Wolfes' interest in the real property they were purchasing. Oregon case law early established the Wolfes' interest was mortgageable. The form of the movants' security devices is unimportant.

Under common law an equitable mortgage is enforceable against the mortgagor, his heirs and assigns and against purchasers and encumbrancers *with notice.* (emphasis added). 59 C.J.S. *Mortgages* § 13. Generally a purchaser is afforded bona fide purchaser status only if the purchaser is acquiring the legal title and not an equitable interest. *77 Am.Jur.2d Vendor & Purchaser § 612 & § 637.*

■ Oregon courts applied the general common law rule early. *Landigan v. Mayer,* 32 Or. 245, 51 P. 649 (1898); *Exon v. Dancke,* 24 Or. 110, 32 P. 1045 (1893).[2] Those cases where the court has refused to cut off the equitable mortgagee's interest indicate the judgment creditor or purchaser had actual notice of the prior interest. *Scott v. Nygaard,* 241 Or. 347, 403 P.2d 15, 405 P.2d 850 (1965); *First Nat'l Bank of Union v. Wegener,* 94 Or. 318, 181 P. 990, 186 P. 4 (1919).

In *Eberly v. Dudley,* 314 F.2d 8 (9th Cir.1962), the Ninth Circuit found Oregon law recognized a chattel mortgage upon after-acquired property to be an equitable lien and to be invalid as to subsequent judgment creditors of the mortgagor. Such an equitable lien would become a legal lien and thus effective against such creditors only upon perfection. Perfection arose when the mortgagee took possession of the secured property.

In *Landigan* and *Exon* the equitable interest was unrecorded. Those cases, therefore, did not include an analysis of the legal effect of recording absent a statute specifically authorizing the filing of the document reflecting the equitable interest.

The *Eberly* court did address this issue. In *Eberly* the sellers retained a chattel mortgage on the assets and after-acquired inventory. They duly recorded the mortgage. The Ninth Circuit, citing *Wiggins Co. v. McMinnville Motor Car Co.,* 111 Or. 123, 225 P. 314 (1924) and *Kenney v. Hurlburt,* 88 Or. 688, 172 P. 490 (1918) held recording of a chattel mortgage on after-acquired property does not constitute constructive notice.

This court has reviewed *Kenney* and *Wiggins.* Both cases involved chattel mortgages on after-acquired property which were duly recorded. In neither case did the Oregon court directly address whether the recording provided constructive notice to parties who might subsequently develop an interest in the secured property. In both cases the court stated the chattel lien could not be perfected until the mortgagee took possession of the secured property. As constructive notice given by appropriate filing is also a method of perfection it appears, as the *Eberly* court noted, the Oregon court, by so holding, indirectly determined the recording gave no constructive notice.[3]

---

2. In *Landigan* the unrecorded interest of a conditional sales seller of personal property who held bare legal title was cut off by a bona fide mortgagee of the real property to which the personal property had become affixed. In *Exon* the interest of a grantor under a recorded deed who continued to hold an equity in the property through an unrecorded equity of defeasance was cut off by a bona fide purchaser. The holding in *Exon* has been codified by ORS 86.-030.

3. This assumption, within the context of the *Kenney* case, is weakened by the court's lengthy quote from a United States Supreme Court case which encourages the validity of recording to perfect interests in after-acquired property. The Supreme Court's voiced concern to support the needs of modern commercial financing was later addressed by the passage of the Uniform Commercial Code.

In *Wiggins* the court noted in passing that many courts, under the stated facts, find constructive notice "insufficient." It found in *Wig-*

Generally courts have held the recording of an instrument covering only some interest or right that is not a proper subject of recordation under the applicable statutes does not operate to give constructive notice of the contents of the instrument to prospective purchasers or encumbrancers of the property. 3 A.L.R.2d 578. American Law Reports, Annotated, indicates the two theories courts have most often given to support their holdings are: (1) The recording statutes were intended to abolish all forms of constructive notice except those expressly provided therein and (2) prospective purchasers or encumbrancers cannot be expected to search the registry for what does not belong there. Annotation, *Record of Instrument which Compromises or includes an Interest or Right that is not a Proper Subject of Record,* 3 A.L.R.2d § 577 at 584.

The Oregon court early recognized that a *legal* mortgage is within the intent of the registry act which requires it to be recorded to effect with notice subsequent encumbrancers and purchasers. An assignment of a mortgage, on the other hand, was not within the intent of the act; its recording would have no effect. *Watson v. Dundee Mortgage & Trust Inv. Co.,* 12 Or. 474, 8 P. 548 (1885).

Addressing a parallel question of the effect of the recordation of an instrument which is itself invalid or was defectively executed but which related to a right or interest properly recordable, many courts have held recording does not constitute notice. 59 C.J.S. *Mortgages* § 203(c). This rule has been recognized in Oregon. *Musgrove v. Bonser,* 5 Or. 313, 316–17 (1874); *Fleschner v. Sumpter,* 12 Or. 161, 6 P. 506 (1885). Such defective documents may be treated as equitable mortgages. 59 C.J.S. *Mortgages* § 16 at 51–52. *Pagenhardt v. Walsh,* 250 Md. 333, 243 A.2d 494 (1968).

Based on the foregoing, this court concludes that absent a statute which is found to authorize the recording of a document reflecting the mortgagees' interest in a vendee's interest in a land sale contract

recording does not impart constructive notice.

The mortgagees argue they hold a status equal to that of the vendee vis a vis the contract vendor and all other third parties. Movants' Supplemental Memorandum, page 3. The mortgagees did not achieve a status of equality with the vendees in relation to third parties only through the documents the vendees executed creating the mortgagees' interests. Those documents consist merely of promissory notes creating a contractual obligation to pay a debt and a mortgage and deed of trust, granting the mortgagees security for repayment of the debts evidenced by the promissory notes. When the vendees executed an absolute assignment of all their rights and obligations under the land sale contract at issue the assignment was to the debtor, Stephen Cox. To support their argument, therefore, the mortgagees must look for support from sources other than merely their contractual relationship with the vendees.

The mortgagees cite *Crowhurst v. Button, supra,* 54 Or.App. at 989, 636 P.2d at 1023, and the provisions of ORS 93.905 *et seq* as authority for their position. In *Crowhurst* the contract vendee's mortgagee, with the knowledge and approval of the vendees, accepted an offer of purchase from a third party and signed the earnest money receipt as sellers. Later the vendee's mortgagee paid the vendor the remaining contract balance and received a deed from the vendor in which the mortgagees were the named grantees. Thereafter the mortgagee and the third party purchaser entered into a formal contract of sale of the property. The purchasers paid the mortgagee the payments under the contract, part of which the mortgagee then transferred to the vendee. It is clear from the facts of this case that all the mortgagee did, except for one payment made not relevant to the analysis here, was done with the knowledge and consent of the original vendees. The mortgagee in es-

*gins,* the subsequent creditors had actual notice of the mortgagees' interest.

sence was acting as the vendee's agent. This court does not believe *Crowhurst* is authority for the mortgagees' position. In *Crowhurst* the mortgagee dealt with the vendor and third party purchasers as the vendee's agent. As such he was executing the *vendee's* rights and obligations, not his own as an equitable mortgagee, except to the extent he and the vendees recognized his right to retain a part of the purchase price as payment for the vendee's obligation, a fact which was undisputed. *Crowhurst* addresses no issues about the nature of an equitable mortgagee's interest vis a vis the vendor, vendee and third parties.

ORS 93.905 *et seq.* states:

93.905 *Definitions for ORS 93.905 to 93.940.* As used in ORS 93.905 to 93.940, unless the context requires otherwise:

(1) "Contract for transfer or conveyance of an interest in real property" shall not include earnest money or preliminary sales agreements, options or rights of first refusal.

(2) "Forfeiture remedy" means the nonjudicial remedy whereby the seller cancels the contract for default, declares the purchaser's rights under the contract to be forfeited, extinguishes the debt and retains sums previously paid thereunder by the buyer.

(3) "Purchase price" means the total price for the interest in the real property as stated in the contract, including but not limited to down payment, other property or value given or promised for which a dollar value is stated in the contract and the balance of the purchase price payable in instalments, not including interest. If the contract provides for the conveyance of an interest in more than one parcel of property, the purchase price shall include only the portion of the price attributable to the remaining, unconveyed interest in real property, if the value thereof is separately stated or can be determined from the terms of the contract.

(4) "Purchaser" means any person who by voluntary transfer acquires a contractu-al interest in real property, any successor in interest to all or any part of the purchaser's contract rights of whom the seller has actual or constructive notice, and any person having a subordinate lien or encumbrance of record, including, but not limited to, a mortgagee, a beneficiary under a trust deed and a purchaser under a subordinate contract for transfer or conveyance of an interest in real property.

(5) "Seller" means any person who transfers or conveys an interest in real property, or any successor in interest of the seller.

(6) "Unpaid balance" means the sum of the unpaid principal balance, accrued unpaid interest and any sums actually paid by the seller on behalf of the purchaser for items required to be paid by the purchaser, including amounts paid for delinquent taxes, assessments or liens, or to obtain or reinstate required insurance.

93.910 *Enforcement of forfeiture remedy after notice of default.* Whenever a contract for transfer or conveyance of an interest in real property provides a forfeiture remedy, whether the remedy is self-executing or is optional, forfeiture of the interest of a purchaser in default under the contract may be enforced only after notice of the default has been given to the purchaser as provided in ORS 93.915, notwithstanding any provision in the contract to the contrary.

93.915 *Notice of default; contents; time of forfeiture.* (1) In the event of a default under a contract for conveyance of real property, a seller who wishes to enforce a forfeiture remedy must give the purchaser written notice by first class and certified mail with return receipt requested.

(2) The notice shall specify the nature of the default, the amount of the default if the default is in the payment terms, the date after which the contract will be forfeited if the purchaser does not cure the default and the name and address of the seller or the attorney for the seller. The period specified in the notice after which the contract will be forfeited may not be less than:

(a) Sixty days, when the purchaser has reduced the unpaid balance to an amount greater than 75 percent of the purchase price;

(b) Ninety days, when the purchaser has reduced the unpaid balance to an amount which is more than 50 percent but less than 75 percent of the purchase price; or

(c) One hundred twenty days, when the purchaser has reduced the unpaid balance to an amount which is 50 percent or less of the purchase price.

(3) The statement contained in the notice as to the time after which the contract will be forfeited if the default is not cured shall conclusively be presumed to be correct, and the notice adequate, unless one or more recipients of such notice notifies the seller or the attorney for the seller, by registered or certified mail, that such recipient claims the right to a longer period of time in which to cure the default.

93.920 *Curing default to avoid forfeiture; payment of costs and expenses.* A purchaser in default may avoid a forfeiture under the contract by curing the default or defaults before expiration of the notice period provided in ORS 93.915. If the default consists of a failure to pay sums when due under the contract, the default may be cured by paying the entire amount due, other than sums that would not then be due had no default occurred, at the time of cure under the terms of the contract. Any other default under the contract may be cured by tendering the performance required under the contract. In addition to paying the sums or tendering the performance necessary to cure the default, the defaulting purchaser shall pay all costs and expenses actually incurred in enforcing the contract, including, but not limited to, late charges, attorney fees not to exceed $350 and costs of title search.

93.925 *Failure to cure default; exclusiveness of notice.* Notwithstanding a seller's waiver of prior defaults, if notice is given and purchaser does not cure the default within the period specified in ORS 93.915, the contract forfeiture remedy may be exercised and the contract shall not be reinstated by any subsequent offer or tender of performance. The notice required in ORS 93.915 shall be in lieu of any notice that may be required under the terms of the contract itself, except where greater notice or notice to persons other than those described in ORS 93.915 is required by the terms of the contract, in which case notice shall be given for such longer period of time and to such additional persons as required by the contract.

93.930 *Recording affidavit after forfeiture; affidavit as evidence.* When a contract for conveyance of real property has been forfeited in accordance with its terms after the seller has given notice to the purchaser as provided in ORS 93.915, the seller shall record an affidavit with the property description, a copy of the notice of default and proof of mailing attached, setting forth that the default of the purchaser under the terms of the contract was not cured within the time period provided in ORS 93.915 and that the contract has been forfeited. When the affidavit is recorded in the deed records of the county where the property described therein is located, the recitals contained in the affidavit shall be prima facie evidence in any court of the truth of the matters set forth therin, but the recitals shall be conclusive in favor of a purchaser for value in good faith relying upon them. Upon recordation of the affidavit, the contract shall be extinguished and canceled, and the purchaser shall have no further right, title or interest in and to the real property.

93.935 *Effect of purchaser's abandonment or reconveyance on interest, lien or claim.* (1) In the event of a default under a contract for conveyance of real property, the interest, lien or claim of a person with respect to the real property, by virtue of an assignment, conveyance, contract, mortgage, trust deed or other lien or claim from or through a purchaser, shall not be affected by the purchaser's abandonment or reconveyance to the seller unless the person is given notice in the manner specified in ORS 93.915.

(2) The notice shall specify the nature of the default, the amount of the default if the default is in the payment terms, the date after which the purchaser's interest in the real property will be abandoned or reconveyed to the seller and the name and address of the seller or the attorney for the seller. The period specified in the notice after which the purchaser's interest will be abandoned or reconveyed to the seller may not be less than:

(a) Sixty days, when the purchaser has reduced the unpaid balance to an amount greater than 75 percent of the purchase price;

(b) Ninety days, when the purchaser has reduced the unpaid balance to an amount which is more than 50 percent but less than 75 percent of the purchase price; or

(c) One hundred twenty days, when the purchaser has reduced the unpaid balance to an amount which is 50 percent or less of the purchase price.

(3) If the person having an interest, lien or claim with respect to the real property, by virtue of an assignment, conveyance, contract, mortgage, trust deed or other lien or claim from or through a purchaser whose interest arises under a contract for conveyance of real property, cures the default as provided in ORS 93.920 then such person's interest, lien or claim with respect to the real property shall not be affected by the purchaser's abandonment or reconveyance to the seller.

93.940 *Effect of seller's foreclosure or other action on interest, lien or claim.* The interest, lien or claim of a person with respect to the real property, by virtue of an assignment, conveyance, contract, mortgage, trust deed or other lien or claim from or through a purchaser whose interest arises under a contract for conveyance of real property, shall be not affected by the seller's foreclosure or other action on the contract unless such person is made a party to the action brought by the seller to enforce or foreclose the contract. In such action, such person shall be entitled to the same rights and opportunities to cure the purchaser's default or satisfy the purchaser's obligations as are granted the purchaser.

93.945 *Application of ORS 93.905 to 93.940.* (1) The provisions of ORS 93.910 to 93.930 shall apply only to forfeiture remedies enforced after July 13, 1985. The date that the initial written notice of a default is given to the purchaser shall be the date of enforcement of the forfeiture remedy.

(2) The provisions of ORS 93.935 and 93.940 shall apply to all contracts for transfer or conveyance of an interest in real property, whether executed on, before or after July 13, 1985.

By the provisions of ORS 93.945(2) the statute could apply to the contract and parties before this court.

This statute reflects the Oregon legislature's dissatisfaction with the holdings of the Oregon Supreme Court in *Brewer, Sanders, Sheehan* and *Demarest* to the extent they state the vendor, in proceeding to regain his property from his vendee, has no duty to protect the interest of the vendee's mortgagee. This court believes the statute creates a duty in the vendor to notify the vendee's mortgagee of his intent to exercise his forfeiture remedies (ORS 93.910), to accept a reconveyance deed or take possession after abandonment (ORS 93.935) or to make the mortgagee a party to any action to enforce or foreclose the contract (ORS 93.940).[4]

ORS 93.910 does not state what the consequence of forfeiture is on the mortgagee's interest if notice is not given by the vendor. ORS 93.935 and ORS 93.940 both indicate that in the event the mortgagee does not receive notice his interest "shall not be affected" by the acts of the vendor. It could be argued that as the mortgagee's interest is not enforceable in the first instance as to the vendor that lack of notice would not effect the vendor's rights in the

---

4. The statute does not indicate the extent of the vendor's duty to notice parties of interest of which he has no actual or constructive notice. This is an ambiguity which could generate future litigation.

property. This interpretation, however would lead to a statutory nullity, as the purpose of the statute clearly is to protect the mortgagee from the vendor's unilateral actions. In Oregon, then, the statute has given the vendee's equitable mortgagee, in relation to a vendor, a property interest greater than that of the traditional equitable mortgagee. This interest can take only one of two forms. It can take the form of a lien on the land which will cloud the vendor's title or it can take the form of a cause of action for damages. The language of the statute suggests the legislature intended the former remedy. The statute makes no mention of monetary damages.

ORS 93.905 *et seq* obliges a vendor to *take notice* of a lien holder's interest in the vendee's interest in the contract. Although there may be a statutory ambiguity as to how far the vendor's duty of notice extends, the court notes the statute, in any event, is placing the vendor on the same level, vis a vis the equitable mortgagee, with the vendee-mortgagor, his heirs and assigns, and purchasers and encumbrancers *with notice*.

This court does not believe the language of ORS 93.905 *et seq*, standing alone, indicates a legislative intent that rights of parties who, at common law would be treated as equitable mortgagees, should be expanded generally. Rather it believes the statute was intended to be a remedy for the specific problem the legislature saw as arising out of the *Brewer* holding.

The mortgagees also assert the language of ORS 93.640, 93.645 and 93.710 grant them the same protections as it grants contract vendees with regard to lien creditors and bona fide purchasers. Thus, they argue, recording their documents gave constructive notice of their interests. In 1973 the Oregon legislature amended ORS 93.-640 and 93.710, the relevant parts for this discussion of which state:

93.640 *Unrecorded instrument affecting title or unrecorded assignment of sheriff's certificate of sale void as to subsequent purchaser.* (1) Every conveyance, deed, land sale contract or other agreement or memorandum thereof affecting the title of real property within this state which is not recorded as provided by law is void as against any subsequent purchaser in good faith and for a valuable consideration of the same real property, or any portion thereof, whose conveyance, deed, land sale contract or other agreement or memorandum thereof is first filed for record, and as against the heirs and assigns of such subsequent purchaser. As used in this section, "memorandum" means an instrument that contains the date of the instrument being memorialized, the names of the parties, a legal description of the real property involved, and the nature of the interest created, which is signed by the person from whom the interest is intended to pass, and acknowledged or proved in the manner provided for the acknowledgment or proof of deeds. A memorandum of an instrument conveying or contracting to convey fee title to any real estate shall state on its face the true and actual consideration paid for such transfer as provided in ORS 93.030.

93.710 *Instrument or memoranda creating certain interests in realty; reforestation order; effect of recording.* (1) Any instrument creating a license, easement, profit a prendre, or a leasehold interest or oil, gas or other mineral interest or estate in real property or an interest in real property created by a land sale contract, or memorandum of such instrument or contract, which is executed by the person from whom the interest is intended to pass, and acknowledged or proved in the manner provided for the acknowledgment or proof of other conveyances, may be indexed and recorded in the records of deeds of real property in the county where such real property is located. Such recordation, whether the instrument be recorded prior to or subsequent to May 29, 1963, constitutes notice of third persons of the rights of the parties under the instrument irrespective of whether the party granted such interest or estate is in possession of

the real property. Any such instrument when so acknowledged or proved, or certified in the manner prescribed by law by any of the authorized officers, may be read in evidence without further proof thereof.

ORS 93.640 is a "race/notice" recording statute. That is priority goes to he who first records his interest. Thus no protection is afforded by the statute to a bona fide purchaser unless he gains priority by first recording. ORS 93.640(1) has been interpreted as not requiring the recording of a land sale contract as a pre-condition to the legitimacy of the contract. Rather the unrecorded contract is determined void only where (1) there is a subsequent purchaser in good faith; (2) the purchaser has paid valuable consideration and; (3) the subsequent purchaser's conveyance is first filed correctly. *Nelson v. Hughes,* 290 Or. 653, 625 P.2d 643 (1981).

Thus vendees under land sale contracts, as to subsequent purchasers, fail to file a record of their interest at their peril. On the other hand if such a record is filed the constructive notice of that interest provided by ORS 93.710(1) eliminates the possibility of a subsequent bona fide purchaser of the affected property.

For years prior to the 1973 amendment to ORS 93.640, the general recording statute, there was debate among Oregon lawyers and legal scholars whether its language provided protection by recordation to the parties to a land sale contract. *See* Note, *supra, Land-Sale Contracts-Recording-Constructive Notice,* 24 Or.L.Rev. at 289 (1945). Case law had not addressed this issue. The specific question was whether the language "Every conveyance affecting the title of real property ..." included such interests. The 1973 legislature resolved the question by adding language specifically referring to a land sale contract. It did not add protective language covering equitable lienholders of the vendee's interest although lending institutions were then commonly using such interests as security. There is no legislative history indicating it was the intent of that body to extend the protection of ORS 93.-640 to equitable mortgagees. Nor do any published cases so hold.

■ This court does not believe it can hold that the language of ORS 93.640 encompasses within its protective language the mortgagees' interests for the following reasons.

First, The Oregon legislature, by passing ORS 93.905 *et seq* has demonstrated it is aware of the issues of priority created out of the interests arising out of land sale contracts and will, when it choses, give clear relief to the holders of equitable mortgages on the vendee's interest in land sale contracts.

Second, the mortgagees' interests would not "affect real title" within the meaning of ORS 93.640 unless it were first found the vendees had a real property interest. This court has just recited the checkered history, in Oregon, of the application of the doctrine of equitable conversion. There is no assurance in every case a vendee would be found to have a real property interest. One could say that the language of ORS 93.640 indicates a legislative intent that the vendee always has a real property interest. On the other hand one can argue ORS 93.645 indicates a legislative intent the vendee hold only a personal property interest.

Third, the legislature could have resolved the myriad questions arising upon execution of land sale contracts involving the rights of vendors, vendees, assignees, mortgagees, judgment creditors and purchasers with a statute containing sweeping language addressing the application of the doctrine of equitable conversion and the effect of filing documents reflecting these interests. It has not chosen to attack the problems in this manner. Rather, it has chosen to provide a specific amendment or a specific statute to address an individual specific problem which has arisen under case law. This opinion has pointed out the history of the Oregon cases leading to each change in turn. Because the legislature has adopted this approach to these complex questions I cannot find it was their intent,

absent clear language to the contrary, to provide protection to the mortgagees herein through the provisions of ORS 93.640.

■ The origins of ORS 93.710 are unclear to this court. It is possible the statute, which prior to 1963 only mentioned leasehold interests, was passed to eliminate any question as to whether the "conveyance affecting the title of real property" language of ORS 93.640 encompassed leasehold interests. In 1963 the statute was amended to include licenses, easements, profits a prende and oil, gas and other mineral interests or estates. In 1973 it was amended to add "or an interest in real property created by a land sale contract." This latter language cannot refer to the mortgagees' interests as they were not created by the Bergen-Wolfe land sale contract but by subsequent security documents. Also, for reasons one and three I have given above in interpreting ORS 93.-640, I find the language of ORS 93.710 does not provide protection to the mortgagees' interests.

■ In 1975 the Oregon legislature, through ORS 93.645 again sought to resolve a problem of priorities involving the vendee's interest in a land sale contract. In *Heider v. Deitz, supra,* 234 Or. at 105, 380 P.2d at 619, the Oregon Supreme Court had refused to apply the doctrine of equitable conversion to the facts before it. The case seemed to reinforce the holding in *May v. Emerson, supra,* 52 Or. at 262, 96 P. at 454, 96 P. at 1065, that the vendor under a land sale contract retains a sufficient property interest in the land to support a valid attachment by his judgment creditor.

ORS 93.645 establishes the priority of interests in realty as between the vendee under a land sale contract and the vendor's subsequent judgment creditor. It states:

93.645 *Priority of purchaser; extinguishing judgment lien; right of judgment creditor' "judgment" defined.* (1) The interest of the purchaser, the heirs and assigns of the purchaser, under a contract for the purchaser and sale of realty, if such contract or memorandum thereof has been recorded in deed records, shall have priority over the lien of any subsequent judgment against the seller of the property, the heirs and assigns of the seller, and conveyance in fulfillment of said contract shall extinguish the lien of any such judgment.

(2) Subsection (1) of this section shall not be construed to limit the right of a judgment creditor to execute upon a vendor's interest in a land sales contract.

(3) For the purposes of subsection (1) of this section, "judgment" includes any lien which by law becomes a lien upon real property in the same manner as a judgment, and includes a judgment or any such lien in favor of the State of Oregon and its agencies.

In *Wyllie v. Ruden,* 76 Or.App. 598, 602, 711 P.2d 137, 139 (1985), the court interpreted the effect of ORS 93.645.

In other words the judgment lien remains viable until it is extinguished by conveyance pursuant to subsection (1) but the vendee has priority over the judgment creditor and may safely make payments to the vendor, unless the judgment creditor has served the vendee with notice of garnishment in execution of the judgment or has caused the vendor's interest to be sold on execution.[5]

Even if this court were to determine the language of ORS 93.645 was intended to extend protection not only to vendees but

5. Although there is language in *May v. Emerson, supra,* 52 Or. at 262, 96 P. at 454, 96 P. at 1065, which suggests the vendee may safely continue to make payments to the vendor until the judgment creditor has placed himself in a legal position to demand payment from the vendee the issue of the effect of notice of the judgement creditor's interest on the vendee's obligation remained unclear. *Wyllie* has eliminated that uncertainty. It could be argued ORS 93.645 reflects a legislative intent the doctrine of equitable conversion not be applied when rights of a vendor's judgment creditor are involved. On the other hand it could be argued the statute does not address the use of the doctrine; it simply defines priorities in the event it is found the doctrine should not apply under specific facts.

also to the mortgagees' interests herein it would not avail them here. The statute protects the interest arising under a contract for the purchase of realty only from judgment creditors of the *vendor*. Under 11 U.S.C. § 544(a)(1) the bankruptcy trustee steps into the shoes of a hypothetical judgment creditor of the debtor. Here the debtor Cox held the *vendee's* interest in the land sale contract.

11 U.S.C. § 544(a) confers upon the trustee, as of the date of the bankruptcy filing, the status of a hypothetical judgment creditor of the debtor (subsection (1)) and of a hypothetical bona fide purchaser of real property from the debtor (subsection (3)).

> Whether the trustee is entitled to such a status and the conditions under which he may attain it are *federal* questions governed by the Bankruptcy Code. But the extent of the trustee's rights, remedies and powers as a lien creditor are measured by the substantive law of the jurisdiction governing the property in question. 4 *Colliers* ¶ 544.02 pages 544–8 and 544–9.

The same is true of the trustee's position as a bona fide purchaser.

The interplay between state and federal law under § 544(a)(3) was addressed in *Saghi v. Walsh*, 27 B.R. 163 (Bankr. 9th Cir. 1983). The court in *Saghi*, although not relying on the case, noted an identical conclusion was reached by the court in *McCannon v. Marston*, 679 F.2d 13 (3rd Cir.1982). In *Saghi* prior to the debtors filing their bankruptcy petition claimants to certain real property to which the debtors held title filed a civil action and recorded a *lis pendens* asserting their claims on the property. The trial court found on filing bankruptcy the claimants' rights were terminated by the trustee's powers under § 544(a)(3). The Bankruptcy Appellate Panel reversed the trial court. It stated:

> The § 544(a)(3) hypothetical bona fide purchaser may be defined as follows:
>
> A person who
>
> (1) at the instant the petition is filed, purchases from the debtor;
>
> (2) for value;

> (3) in good faith;
>
> (4) without actual knowledge of any defect or limitation in title;
>
> (5) every interest in real property the debtor could have purported to convey without the terms of the conveyancing instrument itself evidencing irregularity;
>
> (6) by an instrument that adheres to all formal requisites usually and regularly followed in the relevant jurisdiction (e.g. that the conveyance is in writing and acknowledged); and
>
> (7) who as of the moment of purchase, takes all unilateral steps possible under relevant nonbankruptcy law to perfect the conveyance (e.g. recording).

Section 544(a)'s provision that knowledge of the trustee and of actual creditors is to be ignored is incorporated by element (4) above. However, it does not make irrelevant, notice constructively given by a *lis pendens* any more than it makes irrelevant the constructive notice given by other recorded instruments that might evidence a competing chain of title to the real property in question. *Id.* at 165.

This analysis of the interplay of federal and state law is also applicable to the trustee's status as a judgment creditor under § 544(a)(1).

It is important under our facts to note that the language of § 544(a) makes *actual* knowledge held by the trustee irrelevant. It is also important to recognize that it is federal law which grants the trustee his status as a bona fide purchaser. Thus the general common law rule this court mentioned earlier that a purchaser is afforded bona fide purchaser status only if the purchaser is acquiring the legal title to real property and not an equitable interest therein is not relevant to the facts before this court, even though the estate's interest in the land is equitable in nature.

 This court finds that under Oregon law the mortgagees hold equitable mortgages whose interests may be cut off by subsequent judgment creditors of the debtor and purchasers without notice. It

further finds the recording of the mortgages, under Oregon case law or the cited statutes, did not give constructive notice to the trustee which would defeat his status as either a hypothetical judgment creditor or a bona fide purchaser. As the trustee's actual knowledge is irrelevant under § 544(a), the trustee may avoid the movants' interests in the estate's property.

The trustee has pointed out that if the court were to hold, as it has, that the protection of ORS 93.640 and 93.710 did not extend to the mortgagees herein, and assuming the mortgagees hold an interest in real property, that there would be no protection for future similarly situated mortgagees from a trustee under § 544(a) absent passage of remedial state legislation. The court concurs with that analysis. The court does not believe, however, that the remedy to this predicament is to hold either that (1) a vendees' interest in a contract of sale for realty is a personal property interest or (2) a mortgagee's interest in the vendee's interest is a personal property interest, as the trustee encourages. If this court were to make such findings it would be going outside the record and addressing facts and legal issues not before it, as here, the mortgagees did not file any documents pursuant to the provisions of Article 9 of the Uniform Commercial Code. Second, as this court pointed out early in its opinion, some Oregon cases seem to have treated a vendee's assignment for security of his interest in a land sale contract as a mortgage of the vendee's equitable interest in the land itself. Third, considering the complex and checkered history of the myriad issues involving rights arising out of the execution of land sale contracts this court believes it is far more appropriate for the legislature to address the dilemma which this opinion creates for equitable mortgage holders whose vendee files bankruptcy.

■ The above analysis does not apply to the United States Creditcorp's interest in the five foot strip of land covered by the trust deed. The Wolfes owned the five foot strip outright when they entered into the loan with the United States Creditcorp.

United States Creditcorp properly recorded its interest in the five foot strip in the Deschutes County Mortgage Records, some three years before the debtor filed its petition for relief. Therefore United States Creditcorp's interest in the five foot strip is not avoidable by the Trustee.

Although the parties did not provide the court with a separate value for the five foot strip, this court believes, based on the values given for the full piece of property, it would be less than the amount which it secures. United States Creditcorp's motion for relief should be granted as to the five foot strip and denied as to the rest of the property. Such relief should be conditional. In the event the decision is appealed, the creditors prevail, and the case is remanded to this court for further action under § 362(d), the stay should be reimposed until further order of this court. The United States National Bank's motion should be denied.

■ This court notes that Bankruptcy Rule 7001 requires a trustee to file an adversary proceeding to avoid interests in property under § 544(a). Here the trustee raised the issues in the context of a contested matter. The court believes the requirements of Bankruptcy Rule 7001 can be waived under the circumstances of this case. First, the movants did not raise this procedural issue. More importantly it was incumbent upon the trustee within the context of a motion made under § 362(d), to raise the issue of whether the movants had an interest in the property, as referred to within that statute, that required protection, pursuant to its provisions, in the first instance. Third, the parties stipulated to all facts; thus the procedural provisions incorporated by Bankruptcy Rul 7001 for the parties' protection, were here not required. In addition, both parties, recognizing the legal importance and complexity of the issues raised, allowed themselves sufficient time for legal research and briefing. Thus an order should be entered avoiding the creditors' interests in the property with the exception stated.

This Memorandum Opinion contains the court's findings of fact and conclusions of law and pursuant to Bankruptcy Rule 9014, which incorporates Rule 7052, they will not be separately stated.

An order consistent herewith shall be entered.