**In re GOLD KEY PROPERTIES, INC., Debtor.**

**Milo BULLOCK and Blanche Bullock, Plaintiffs,**

v.

**Eric R.T. ROOST, Trustee, Defendant.**

**Bankruptcy No. 689–60578–R7.**
**Adv. No. 689–6179–R7.**

United States Bankruptcy Court,
D. Oregon.

Oct. 5, 1990.

Gary M. Bullock, Portland, Or., for plaintiffs.

Douglas R. Schultz, Cass, Scott, Woods & Smith, Eugene, Or., for defendant.

Rod Johnson, Roseburg, Or., for creditors, Mel Stroup, Joyce Stroup and Margarete Tollefson.

## MEMORANDUM OPINION

ALBERT E. RADCLIFFE, Bankruptcy Judge.

This matter comes before the court on cross motions for summary judgment.

This adversary proceeding was brought by plaintiffs, as creditors of the debtor, Gold Key Properties, Inc., against the defendant, as the trustee in bankruptcy, herein, seeking a declaration of this court that plaintiffs hold a valid and properly perfected security interest in the debtor's interest, as vendor, in a land sale contract and the real property subject to that contract. Plaintiffs also seek relief from the automatic stay pursuant to 11 U.S.C. § 362. The undisputed facts are as follows:

On February 1, 1980, Roye A. Marshall and John H. Johnson, Jr., sold certain real property to Beverly J. Cade by way of a land sale contract. The contract and the fulfillment deed are being held in escrow at First Interstate Bank, the successor in interest to Timber Community Bank. On or prior to January 6, 1984, the debtor acquired all of the rights of the vendors in the land sale contract and the real property subject thereto.

On January 6, 1984, the debtor executed a promissory note to the plaintiffs in the principal amount of $24,015.42. In order to secure the obligation, debtor executed an "Assignment for Collateral Security of Seller's Interest in Sales Contract" (the collateral assignment). The plaintiffs recorded the collateral assignment in the real property records of Douglas County on January 11, 1984 but they have not filed a UCC financing statement with the State of Oregon, Secretary of State's Office. There is no provision in the collateral assignment for direct payment of the installment payments to be made by Cade, pursuant to the contract, to the plaintiffs.

On February 27, 1989 an involuntary Chapter 7 bankruptcy petition was filed against the debtor; an order for relief was entered herein on July 14, 1989.

On October 20, 1989 the plaintiffs commenced this adversary proceeding. Creditors Mel Stroup, Joyce Stroup and Margarete Tollefson (who hold claims similar to the plaintiffs') have filed an amicus brief with the permission of this court.

## ISSUES

The central issue to be decided by this court concerns the defendant's power to avoid the asserted security interest of the plaintiffs by the use of his strong-arm powers under 11 U.S.C. § 544 as a hypothetical bona fide purchaser of real property and/or as a hypothetical judgment lien creditor. This involves a discussion of the nature of the interest received by the plaintiffs from the debtor, by virtue of the collateral assignment, and the effect of the plaintiffs' recording of such collateral assignment in the Douglas County real property records.

## DISCUSSION

All statutory references are to the Bankruptcy Code, Title 11 United States Code unless otherwise indicated.

The defendant, as trustee, obtains his status as a hypothetical bona fide purchas-

er of real property or a hypothetical judgment lien creditor pursuant to § 544(a) which provides as follows:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

■ The extent, however, to which the defendant may utilize the powers conferred by § 544 to avoid transfers of property of the debtor or obligations incurred by the debtor is governed by state law. *See In re Cox*, 68 B.R. 788 (Bankr.D.Or.1987).

The discussion here, must necessarily begin with a review of two key cases. The first is *In re Cox, supra*. In *Cox* the Wolfes as the buyers of property pursuant to a land sale contract, borrowed money from United States National Bank and United States Credit Corp, giving to U.S. National Bank a mortgage and to United States Credit Corp a trust deed on the subject property to secure repayment of the loans. These documents were recorded in the real property records. Later, the Wolfes conveyed their interest in the property to the debtor by way of a "subcontract" of the original land sale contract and an assignment of the original land sale contract which was recorded.

The court held that the trustee could avoid the interest of the holders of the mortgage and trust deed.

This court finds that under Oregon law the mortgagees hold equitable mortgages whose interest may be cut off by subsequent judgment creditors of the debtor and purchasers without notice. It further finds the recording of the mortgages, under Oregon case law or the cited statutes, did not give constructive notice to the trustee which would defeat his status as either a hypothetical judgment creditor or a bona fide purchaser. As the trustee's actual knowledge is irrelevant under § 544(a), the trustee may avoid the movants' interests in the estate's property.

*In re Cox*, 68 B.R. at 802–803.

After the *Cox* case was decided, the Oregon Supreme Court considered a similar question concerning the assignment, for security purposes, of a *vendor's* interest in a land sale contract. *Security Bank v. Chiapuzio*, 304 Or. 438, 747 P.2d 335 (1987).

In *Chiapuzio*, Security Bank sued to foreclose its security interest in a land sale contract and the land subject to the contract. The bank had acquired the vendor's interest in the land sale contract and the property subject to the contract as collateral for a loan to the vendor under the contract, Henry Bunnell. Although Bunnell had transferred all of his right and interest in and to the property to secure the loan, the court held that the bank became the equivalent of a holder of a mortgage on real property and the holder of a security interest in a secured obligation. The bank recorded its assignment in the real property records but did not file a UCC financing statement. Subsequently, Chiapuzio, without actual knowledge of that transaction, purchased Bunnell's vendor's interest in the contract. Chiapuzio claimed that the

bank's interest in the contract was inferior to his because the bank did not file a UCC financing statement.

The Oregon Supreme Court held that, under Oregon law, a vendor of an executory land sale contract possesses two distinct, divisible and separable interests. The first is the vendor's interest in the real property subject to the land sale contract. The second is the vendor's interest in the contract itself (that is, the right to receive the payments made and to be made on the contract). The appropriate method of perfecting an interest depends upon the type of interest involved. The vendor's interest in the land can be perfected by recording in the real property records, but to perfect a security interest in the vendor's interest in the contract itself, a UCC financing statement must be filed pursuant to O.R.S. Chapter 79 (UCC Article 9).

Since Chiapuzio had purchased an interest in *both* the land sale contract and the land, recording of the bank's interest in the real property records gave Chiapuzio constructive notice of the bank's interest. The court rejected Chiapuzio's argument that because the bank had not properly perfected its interest in the contract he should prevail.

> It would be contrary to the real property recording statutes to hold that Chiapuzio was a buyer without knowledge of the security interest. Knowledge of the Bank's security interest was available to Chiapuzio if he had looked in the real property records, and he had reason to look in those records because he was himself purchasing an interest in the land as well as in the land sale contract. Even though perfection of a security interest in land and in a land sale contract requires registration in different records, the interests are so closely related that legally adequate knowledge of one interest should be deemed to give constructive notice of an interest in the other. We hold that recording one of the interests in either the real property records or in the Article 9 files is sufficient to give notice to any party who has reason to search those records that all other interest also may be affected. Having been

given such notice, or having chosen to avoid such notice, a party to this type of transaction cannot say that there was no knowledge of an encumbrance on his claim. Constructive notice of both interests is given by registration in either the real property records or the Article 9 files when the acquiring party has reason to look where actual notice is recorded or filed.... Registration, and thus notice, in either the Article 9 filings *or* the real estate records will be adequate when the contested claims for priority involve *both* interests. [Emphasis in original.]

*Security Bank v. Chiapuzio,* 747 P.2d at 344.

## EFFECT OF THE DOUGLAS COUNTY RECORDING:

■ The defendant contends that the recording of the collateral assignment in the Douglas County real property records did not serve to perfect the plaintiffs' security interest, either in the property subject to the land sale contract or the land sale contract itself. He argues that at the time the document was recorded, Oregon law did not require or permit the recording of an assignment of a vendor's interest in a land sale contract. Defendant relies upon *In re Cox, supra* and O.R.S. 87.920. While defendant concedes that present Oregon statutory law specifically provides that an assignment of all or any portion of a seller's interest in a land sale contract may be recorded, he asserts that such authority is conferred only by 1989 amendments to Oregon Revised Statutes which became effective October 3, 1989. Prior to that date, Oregon law did not expressly authorize or require the recording of the assignment of all or any portion of a seller's interest in a land sale contract, hence, pursuant to the reasoning in *Cox, supra* and O.R.S. 87.920, the recording of the collateral assignment in the Douglas County real property records is simply ineffective and does not impart constructive notice to the trustee that would defeat his strong-arm powers under § 544.

Plaintiffs maintain that, by necessary implication, the Oregon Supreme Court has

construed pre–1989 Oregon law to allow the recording of an assignment of the vendor's interest in a land sale contract as constructive notice since it upheld the validity of such a recording in ruling against Chiapuzio in *Security Bank v. Chiapuzio, supra.*

In *Cox* the court concluded that Oregon statutes did not require or permit the recording of a mortgage or a trust deed on a contract *vendee's* interest in real property subject to a land sale contract. Since such a recording was not required or permitted, the recording did not provide constructive notice. Therefore, the trustee could use his "strong-arm powers" as a hypothetical bona fide purchaser of real property under § 544(a)(3) to avoid the mortgagee's interest.

> ... absent a statute that is found to authorize the recording of a document reflecting the mortgagees' interest in a vendee's interest in a land sale contract recording does not impart constructive notice.

*In re Cox*, 68 B.R. at 795.

> Generally courts have held the recording of an instrument covering only some interest or right that is not a proper subject of recordation under the applicable statutes does not operate to give constructive notice of the contents of the instrument to prospective purchasers or encumbrancers of the property. [Citation omitted.] ... the two theories courts have most often given to support their holdings are: (1) The recording statutes were intended to abolish all forms of constructive notice except those expressly provided therein and (2) prospective purchasers or encumbrancers cannot be expected to search the registry for what does not belong there. [Citation omitted.]

*Id.* at 795.

O.R.S. 87.920 provides as follows:

> Except where filing of the document is specifically required or authorized by statute, no document filed for recording or otherwise with any public officer in this state before or after October 15, 1983, shall create a lien or encumbrance upon or affect the title to the real or personal property of any person or constitute actual or constructive notice to any person of the information contained therein.

Defendant correctly points out that O.R.S. 87.920 was not specifically addressed in the *Chiapuzio* opinion. Defendant concludes that that court, therefore, overlooked the statute and that, therefore, *Chiapuzio* was wrongly decided.

While it is true that O.R.S. 87.920 is not specifically addressed in the *Chiapuzio* opinion, it is not the position of this court to suggest that that case was wrongly decided. It has already been shown that the nature of the defendant's interest as a hypothetical bona fide purchaser or judgment lien creditor is determined by state law. Likewise, the interest of the plaintiffs as collateral assignees and the effect of the recording of the collateral assignment in the Douglas County real property records is also a question of state law. Accordingly, this court is bound by the decisions of the Oregon Supreme Court deciding questions of Oregon law as the highest authority on that subject.

It is noteworthy that, in *Cox*, the court was concerned with the granting of a security interest in a vendee's interest in a land sale contract, whereas, in *Chiapuzio*, as in the instant case, the court dealt with the assignment of a vendor's interest in a land sale contract. Thus, *Chiapuzio* and *Cox* may be distinguished from each other. The *Chiapuzio* decision must control, however, to the extent that the cases are inconsistent. Since the court, in *Chiapuzio*, held that Security Bank had given constructive notice of its interest in the Bunnell contract by virtue of the bank's recording in the real property records of its assignment of Bunnell's vendor's interest, this court must agree with the plaintiffs that the Oregon Supreme Court, by implication, has decided that the recording of an assignment of a vendor's interest in a land sale contract was authorized by Oregon law prior to 1989.

Accordingly, this court concludes that plaintiffs have a valid and perfected securi-

ty interest in the real property that is the subject of the land sale contract in question. In addition, following the rationale set forth in *Security Bank v. Chiapuzio, supra,* this court concludes that the recording of the collateral assignment in the Douglas County real property records does impart constructive notice to the defendant. The defendant may not, therefore, avoid the plaintiff's security interest in the real property through the use of his powers as set forth in § 544(a). It follows that this constructive notice also defeats the trustee's ability to avoid the plaintiffs' interest, if any, in the land sale contract itself (the right to receive the stream of payments provided for therein) under § 544(a)(3) as a hypothetical bona fide purchaser of real property.

TRUSTEE'S STATUS AS HYPOTHETICAL JUDICIAL LIEN CREDITOR:

■ There remains to be decided, however, the question of the relative priority of the parties with respect to the land sale contract in issue here (the right to receive the stream of payments). The defendant argues that he may avoid the plaintiffs' interest, if any, in the contract itself through the exercise of his powers as a hypothetical judgment lien creditor. Although the recording of the collateral assignment in the real property records imparts constructive notice to the defendant and others that the plaintiffs may claim an interest in the contract payments, the plaintiffs have not perfected their interest in the contract.

> In holding that legally adequate registration in either place will be adequate to give notice to those who have reason to inquire in both places, we are not holding that registration in one place constitutes legal compliance with the requirement of the other form of registration, whether Article 9 or the real estate recording statutes.

*Security Bank v. Chiapuzio,* 747 P.2d at 345 n. 14.

In Oregon, the holder of an unperfected security interest has rights subordinate to the rights of a person who becomes a judgment lien creditor (even a judgment lien creditor with notice) before the security interest is perfected. O.R.S. 79.3010(1) and (4) provide (in part) as follows:

> (1) Except as otherwise provided in subsection (2) and (3) of this section, an unperfected security interest is subordinate to the rights of
>
> \*     \*     \*     \*     \*     \*
>
> (b) a person who becomes a lien creditor before the security interest is perfected;
>
> \*     \*     \*     \*     \*     \*
>
> (4) A "lien creditor" means ... a trustee in bankruptcy from the date of the filing of the petition....

Here, the plaintiffs did not perfect their interest in the land sale contract because they did not file a UCC financing statement with the State of Oregon, Secretary of State's Office. The plaintiffs' unperfected security interest in the land sale contract is clearly subordinate to the trustee as a hypothetical judgment lien creditor.

The court notes that there appears to be a dispute between the parties as to whether or not the debtor intended, as part of the collateral assignment, to assign its rights in the contract payments to plaintiffs. This would appear to present a question of fact. In light of this court's reasoning set forth above, however, this issue of fact is not material as this court need not decide whether or not the plaintiffs were granted a security interest in the land sale contract payments.

In addition, plaintiffs seek, by their complaint, relief from the automatic stay of § 362. Neither party has briefed that subject in the cross motions for summary judgment, therefore, resolution of that issue is not appropriate at this time.

## CONCLUSION

This court finds that the defendant may not avoid the plaintiffs' interest in the land which is the subject of the collateral assignment. Accordingly, summary judgment shall be awarded to the plaintiffs as to that portion of their motion. This court further concludes that the defendant may, under the powers contained in § 544(a)(1)

or (2) avoid the plaintiffs' interest in the land sale contract (that is, the right to receive the contract payments) and summary judgment shall be awarded to the defendant as to that portion of his motion. All other portions of the cross motions for summary judgment are denied.

This memorandum opinion contains the court's findings of fact and conclusions of law; they shall not be separately stated. An order consistent herewith shall be entered.